28 C.C.P.A.(Patents)

## In re MOCK.

### Patent Appeal No. 4412.

Court of Customs and Patent Appeals.

Feb. 24, 1941.

N. D. Parker, Jr., of Washington, D. C., and A. R. McCrady, of South Bend, Ind. (N. D. Parker, Jr., of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner in the United States Patent Office rejected all of appellant's claims in an application relating to carburetors. The claims were numbered 8, 10, 13, 15, and 23 to 30, inclusive. The Board of Appeals affirmed the decision of the examiner, and appellant has appealed here from the decision of the board. As to claims 24 to 28, inclusive, appellant has moved to dismiss the appeal and the motion is granted and the appeal as to those claims will be dismissed.

The claims before us, being all the claims remaining in the application, are numbered 8, 10, 13, 15, 23, 29 and 30, and were rejected on the prior art. Although all the appealed claims differ somewhat in phraseology, claim 8 may be taken as illustrative and follows: "8. In a carburetor, a section designed to be attached to a part of the engine, a second section separated from the first mentioned section by heat insulation and including a fuel reservoir and a boss projecting therein, a bore in said boss, a fuel nozzle mounted in the bore of said boss and spaced from the walls thereof to form a well, means for supplying fuel from the reservoir directly to said well, ports connecting the well to the nozzle adjacent the midsection of the latter, and venting means at the uppermost portion of said well of sufficiently large cross-section to permit the escape of fuel bubbles therethrough."

The references relied upon are: Udale, 1,618,244, February 22, 1927; Ball et al., 1,881,256, October 4, 1932; Blattner, 2,092,827, September 14, 1937.

Appellant's invention is concerned with the improvement of carburetors so as to avoid what is now well-known in the art as "percolation." Old style carburetors were called updraft carburetors, i. e., the air and fuel went in at the bottom and traveled upward. The instant invention applies to newer models in carburetors known as downdraft carburetors, where the direction of the entrance of the air and fuel is reversed from that of the old style carburetors. The problem of percolation, according to appellant (and his contention in this respect is not questioned here), was not present with updraft carburetors using old style gasoline which had a higher boiling point than the more volatile varieties later produced. With the downdraft carburetor using highly volatile gasoline, the problem became a serious one when the engine became heated and was slowed down to an idling speed or stopped. The more volatile constituents in the gasoline began to boil, in which instance bubbles formed on the metal surface of the nozzle and increased in size by agglomeration until a single large bubble occupied the entire cross-section of the nozzle. The buoyancy of the large bubbles would cause them to rise and escape through the discharge end of the nozzle, pushing ahead of them "slugs" of liquid fuel which would be dis-

charged into the intake passage of the engine. This cycle continued to be repeated, and being similar to that which occurs in an ordinary coffee percolator, the engineers styled it "percolation." The slugs which were discharged into the engine caused it to stall if running slowly, and when the engine was at rest they retarded the starting of the same. The old style carburetor was located farther away from the engine exhaust manifold than in the new style carburetor. The hot exhaust manifold was the chief source of heat which caused the boiling of the fuel.

Figure 3 of appellant's drawings, which is one of the embodiments of the invention and the one with which we are here concerned, together with the pertinent figures in the drawings of the references, are herewith reproduced:

FIGURE 3 OF APPLICANT:

FIGURE 3 OF UDALE:

Fig. III
FIGURE 1 OF BLATTNER

SOLE FIGURE OF BALL ET AL.:

The application of appellant describes the embodiment of his invention here involved, by referring to his drawings in the following terms (the numerals in brackets read on figure 3; in the specification other numerals, reading on other figures, are given, but the structure referred to is the same):

"Operation: The normal level of fuel in the carburetor when the engine is not running is indicated by the line L----L. If now the engine is started and the throttle valve opened sufficiently to draw fuel from the outlet 60, the fuel level in passage [80] will be lowered until air is bled into the bore 58 through port 66, chamber 62, passage [80] and ports [78], to form with the fuel an emulsion in the known manner.

"If the engine is allowed to stand while hot, or is run at such speed and temperature conditions as would otherwise cause 'percolation', vapor bubbles which form in well 54 can enter the bore 58 only by

passing through the relatively small ports [78], which surface tension prevents their doing. Instead, they will gravitate toward the highest point in well 54, at which point a vent is provided in the form of passage [80]. The bubbles moving upwardly through this passage will carry some liquid fuel upwardly with them; but upon reaching the chamber 62 the vapor will separate itself from the liquid fuel and escape through port 66. The chamber 62 is of sufficient cross section and capacity to permit a considerable quantity of fuel to collect therein without being forced out of the port 66, and hydrostatic pressure will at all times tend to cause a return flow of liquid fuel through passage [80], to the fuel nozzle. The boiling or 'percolating' of liquid fuel out of outlet 60 is therefore prevented.

\*     \*     \*     \*     \*

"\* \* \* The fuel enters the nozzle through a calibrated orifice 74 formed in plug 46, and thence passes through a slot 75 in the lower end of nozzle 36 to a well 76 communicating with well 54, which in turn communicates with the bore 58 of the nozzle through a series of ports 56 formed in the lower side of nozzle 36, the ports being of such size that they will not pass vapor bubbles. At its upper end, nozzle 36 communicates, through a plurality of ports 78, with a passage 80 which leads to chamber 62. \* \* \*"

The claims here involved were rejected by the examiner on the patent to Blattner in view of the patents to Udale and Ball et al.

The Board of Appeals devoted most of its attention to the claims concerning which the appeal has been dismissed in this court. It, however, agreed with the examiner that the claims at bar were not patentable over the prior art. As to claims 13 and 15, the board made the following statement: "Claims 13 and 15 are not clear as to the ports of aggregate capacity and greater fuel flow capacity than the restriction. The specification makes no such statement."

Appellant contends that the board is in error in making the last-quoted statement and points out that in his specification is a statement which fully supports the said controverted limitations in said claims 13 and 15. The Solicitor for the Patent Office states in his brief in this court that in view of this fact the aforesaid objection to claims 13 and 15 should not now

be insisted upon, and since we are in agreement with the solicitor in this respect we will give this question no further consideration.

Appellant's device is so made that the gasoline comes in from the gasoline chamber in the carburetor to what is called a well which surrounds the nozzle. The bubbles in the fuel which form in the well cannot get into the nozzle on account of the smallness of the ports leading from the well to the nozzle. It is said that "surface tension" holds the small bubbles to the walls adjacent the nozzle until they agglomerate into larger ones, when they proceed up to the top of the well which extends almost to the level of the gasoline in the aforesaid chamber. There the said large bubbles are prevented from proceeding further through the nozzle and into the intake of the motor. Being barred from going further with the gasoline, the bubbles travel up a venting channel which leaves the well at its uppermost portion. The venting channel projects upwards to an enlarged chamber having a calibrated opening to the atmosphere, which opening is calculated to let in air or permit the escape of vapors. The enlarged chamber at the upper portion of said venting channel is for the purpose of permitting the bubbles to rise and burst. The gasoline returns to the carburetor and the gas in the bubble goes out into the atmosphere.

It will be noticed that claim 8, after describing a certain portion of the appellant's structure, states: "and venting means at the uppermost portion of said well of sufficiently large cross-section to permit the escape of fuel bubbles therethrough." Claim 10 is the same as claim 8 except that the venting means is described in the following language: "wherein the vent extends upwardly to a point above the normal fuel level in the carburetor and terminates in an enlarged chamber having a calibrated opening to atmosphere adapted to act as an air bleed as well as to permit the escape of vapors." In each of the other claims on appeal, the said venting means is, in some manner, described, and the board, in approving the rejection of the claims, made no distinction between them as far as this feature was concerned, and we think that if claims 8 and 10 should be held to be allowable, the other claims before us should also be allowed.

Blattner in his patent, the basic reference, attempted to solve the percolation problem in a downdraft carburetor, and in some respects disclosed a portion of the plan which applicant seems to have followed. It is not contended by the Patent Office tribunals that Blattner anticipates appellant's invention, nor is it urged that Blattner's structure in any sense solved the problem of percolation. It is the position of the Patent Office tribunals that it would not amount to invention to add to the structure of Blattner the so-called venting features of Udale and Ball et al., and that the limitation as to the enlarged chamber at the top of the vent, such as is in claim 10, does not lend patentability to the claims containing such limitation for the reason that it would not be invention to modify the chamber of the venting means of Blattner to accomplish the purposes stated by the applicant.

Blattner recognizes that percolation occurs in downdraft carburetors. He thought that the small bubbles which would form on the walls would pass upward through his venting means before they agglomerated into large bubbles, although the cross-sectional area of the orifice of the venting means, where it leaves the nozzle, was shown to be smaller than that of the nozzle. He said nothing about "surface tension" holding the small bubbles until they agglomerated into large ones. He evidently assumed that the small ones would pass out through the vent before they were formed into large ones. He admits that if the large bubbles form they would pass up through the nozzle and cause percolation. It is conceded by all that large bubbles, if they pass through the nozzle, will cause percolation. Blattner makes no provision for taking care of the bubbles, large or small, that may form in the upper portion of his nozzle.

Appellant has departed from the Blattner disclosure by providing a means for keeping the bubbles out of the nozzle, and a means which will insure that they will pass up the venting means and be permitted to burst in an enlarged chamber. Applicant's invention rests largely upon the premise that the small bubbles which form on the walls would adhere to the walls until they form large bubbles. In Blattner, under these circumstances, the bubbles would not necessarily go up the vent, but would be more likely to continue upward in the nozzle. Applicant properly asks why was Blattner concerned with taking care of the small bubbles if they would not bring about percolation if permitted to go through the nozzle? It is only the large bubbles which bridge across the nozzle which could bring about percolation. It seems obvious that Blattner failed to recognize the immediate cause of the problem he was attempting to solve and that with a full recognition of all phases of this problem and by providing a suitable structure for correcting the defects in the Blattner device, applicant successfully solved the difficult problem involved.

Blattner does not place his vent at "the uppermost portion of the well" and while a restriction at the top of the vent is shown in Blattner, no bubble-bursting chamber is shown; certainly no such chamber is described in the patent as serving the purpose for which it was intended in applicant's device. The device of Blattner and that of applicant differ in other respects, but it is not necessary for us, in view of our conclusion, to dwell longer upon this phase of the case.

The Udale patent applies to an updraft carburetor, and the so-called venting means, unlike Blattner, was at the uppermost portion of the well. Udale discloses no enlarged bubble-bursting chamber. He was not concerned with the problem of percolation or bubble-bursting because, as is hereinbefore stated, the problem was not present at that time. His proposed venting means was for an air bleed so as to aid in the control of the mixture of the gasoline with the air in starting an automobile. Udale's teachings are barren of any thought of permitting the escape of bubbles, although it would seem that if bubbles did form (it is admitted that at that time in that kind of carburetor they would not form or would not present difficulties) they would pass up the venting means into the atmosphere.

The improvement in Ball et al. relates to an updraft carburetor and is directed to substantially the same problem as that of Udale. They attempted to solve in like manner the same problem presented to Udale by having an air vent at the top of the gasoline well of the carburetor. In neither patent is there a suggestion of bubbles going up the air-venting means.

The exact question presented is whether or not it would amount to invention to solve the problem which Blattner attempted

to solve, but failed to solve, by taking the air-venting means of Udale or of Ball et al. and installing it in the Blattner structure. It is our view that notwithstanding the teachings of Blattner, Udale, and Ball et al., appellant, by providing the structure described in each of the appealed claims, has done something more than is the result of the exercise of mechanical skill and that he has shown a high order of inventive genius. If we assume that the air-venting means of Udale and Ball et al., which related to wholly different subject matter, were before Blattner when he attempted to solve his problem (and for our present purposes we must indulge such an assumption), we do not think it probable that the applicant, without the exercise of the inventive faculties, would think of taking the air-venting means from either of the two former structures and of incorporating it into the Blattner device. What was there in the prior art that would suggest to one who only exercised mechanical skill that an air-venting means where no percolation problem prevailed would, if installed into Blattner's structure, make the Blattner structure perform the function for which it was intended?

We do not look upon this case as the ordinary case of combining the well-known and well-understood disclosures in two references to anticipate a given invention. Sometimes, without the exercise of the inventive faculties, it is a very simple matter to take a desired feature of one disclosure, add it to another, and get a structure which is an improvement over either. Usually in such cases, to one skilled in the art, it is the obvious thing to do or there is some teaching or suggestion that the problem presented may be solved in that way.

Certain affidavits relating to commercial success and which are said to support the statements concerning the commercial situation stated in a brief filed by appellant in the Patent Office do not appear to be in the instant record. However, there is, in the record, an affidavit by the applicant which was before the board, going to the question of commercial success, which shows that carburetors embodying the invention at bar were, at the time of making the affidavit, October 23, 1939, being made at the rate of 10,000 per week, and that the total number of carburetors embodying said invention, which at that time were in use on automobiles, was more than a million; that such devices at the time of making the affidavit were standard original equipment on Buick, Chrysler, Studebaker, Packard and other well-known makes of automobiles, and that they were manufactured by the Bendix Stromberg Carburetor Company.

While affidavits showing commercial success, in cases like that at bar, are not conclusive on the question of patentability, because quite often commercial success may not be attributable to the improvement alone, nevertheless, the affidavit at bar is a matter of some importance since it does show that appellant's device was successful where the Blattner device, for reasons which seem obvious from an examination of the patent itself, was not a success insofar as solving the instant problem was concerned.

It is our view that the appealed claims define invention over the prior art cited, and that appellant is entitled to protection thereon by the allowance of the appealed claims. The appeal as to claims 24 to 28, inclusive, is dismissed. The decision of the Board of Appeals, affirming that of the examiner in rejecting the remaining claims at bar, is reversed.

Reversed.