35 C.C.P.A.(Patents)

## Application of BURGESS.
## Patent Appeal No. 5373.

Court of Customs and Patent Appeals.
April 6, 1948.

Emery, Varney, Whittemore & Dix, of New York City (Nichol M. Sandoe, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C. of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all the claims in appellant's application for a patent for an alleged invention relating to a process of forming yarn.

Claims 1, 3, and 7 which are typical of the appealed claims are as follows:

"1. A process for forming yarn containing intermingled fibers of a plurality of different colors which comprises forming a plurality of rovings from staple fibers, dyeing at least one of said rovings a color different from that of at least one other of said rovings, doubling and drawing said rovings of different color to form a roving in which the fibers of the rovings of different color are intermingled, thereafter repeatedly doubling and drawing said roving with another similarly doubled and drawn roving of similar color characteristics to increase the thoroughness of the intermingling, and spinning the resulting roving to form a yarn."

"3. A process for forming yarn containing intermingled fibers of a plurality of different colors which comprises doubling and drawing a plurality of staple fiber rovings of different color to form a roving in which the fibers of the rovings of different color are intermingled, thereafter repeatedly doubling and drawing said roving with another similarily doubled and drawn roving of similar color characteristics to increase the thoroughness of the intermingling, and spinning the resulting roving to form a yarn."

"7. In the cotton system for forming yarn from staple fibers of cotton or rayon in which the fibers are processed successively in drawing frames, slubbers, intermediates and spinning frames, the process for forming yarn containing intermingled fibers of a plurality of different colors which comprises carrying undyed fibers through such drawing frames and slubbers and forming rovings from such fibers in such slubbers, dyeing such rovings a plurality of different colors, doubling and drawing a roving of one color with at least one roving of different color at a stage prior to said intermediates to form a roving in which the fibers of different color are intermingled, thereafter carrying said roving through said intermediates and repeatedly doubling and drawing said roving in said intermediates with another similarly doubled and drawn roving of similar color characteristics to increase the thoroughness of the intermingling, and spinning the resulting roving to form a yarn."

The references relied on are:

Watson's Textile Design and Color, pages 144, 145, and Midgley Technical Terms in the Textile Trade, pages 152, 153.

Appellant's application relates to the making of yarn from fibers, particular emphasis being placed on yarns made from cotton fibers. As stated in the application, the usual process of making yarn involves first carding the fibers, then forming them into slivers, which are strands of loosely matted fibers, then doubling, drawing, and slightly twisting the fibers of two or more slivers to form what is known as a roving, and then further doubling and twisting two or more rovings together to form the yarn. The step of doubling, drawing, and twisting the slivers to form rovings is known as slubbing.

Appellant's process departs from the usual procedure, just described, by dyeing the rovings in two or more different colors and combining rovings of different colors in the final doubling and twisting, by which the yarn is formed, thus producing a blended color. It is alleged in the affidavit of John Hoye, a textile expert, that prior to appellant's invention, mixed color yarns of cotton and rayon have not been produced except by the so-called "stock dyeing," which involves a dyeing in different colors and mixing of the raw fibers prior to carding, or by cross dyeing which involves the use of fibers of different kinds and selective dyes which will color fibers of one kind but not of the other. The affiant also points out a distinction between the production of wool and cotton yarns, namely, that wool yarns are carded or combed in such manner as to remove the short fibers, leaving a material known as "tops" which, because of the length of the fibers, has substantial strength and may be wound on springs for dyeing, whereas cotton yarns, after carding, contain short fibers and are too loosely connected to permit such winding and dyeing.

The Watson and Midgley publications, relied on in the rejection of the appealed claims, disclose the stock dyeing process described in the Hoye affidavit, and the Watson publication also discloses the cross dyeing process described in that affidavit. In addition, the Watson pulication states that blended yarns have been made by dyeing fibers in the "raw or the sliver condition" and mixing them, and the Midgley publication refers to a process of "slubbing dyeing" which is "usually obtained by dyeing the material in the top form" and which is "the result of running together, in the first process of drawing, tops of different colour." It is also stated in the Watson publication that the mixing of differently dyed fibers "may be done in the later stages prior to spinning with the object of producing a colour mixture in which each colour retains its purity."

The Midgley publication is expressly limited to dyeing "as practised in the woollen [sic] trade." The Watson publication is not expressly so limited. However, it is clearly indicated in appellant's application and in the Hoye affidavit that cotton fibers in the sliver stage are too loose and fragile to permit dyeing, and the examiner states that cotton slivers are "unsuited for dyeing." It is clear, therefore, that the Watson publication must be referring to wool slivers or tops which, as hereinbefore stated, have sufficient strength to permit dyeing. The mixing of differently dyed fibers, referred to in that publication, in "the later stages prior to spinning" evidently refers to operations taking place at a considerably later stage than that at which appellant mixes his dyed fibers, since it is stated that a mixture results in which "each colour retains its purity," whereas appellant's mixing takes place early enough to produce a blended colour. This disclosure in the Watson publication of dyeing "in the later stages," therefore, is not, in our opinion, pertinent to the subject matter of the appealed claims.

It thus appears that the most pertinent portions of the disclosures of the references are limited to the dyeing of wool. Watson's most pertinent disclosure is that of dyeing the fibers in different colors in the "sliver condition," the term "sliver," as used by him, being synonymous with "top condition," and Midgley's most pertinent disclosure is substantially identical with that of Watson and involves the dyeing of the fibers "in the top form" and "running together, in the first process of drawing, tops of different colour." Although Midgley re-

fers to this process as "slubbing dyeing" it is clear that the dyeing is actually done immediately before slubbing since he states that the fibers are dyed in top form, which is their form prior to slubbing and since he also states that the *colored* fibers are run together in the first process of drawing, which process is the one called "slubbing."

The references, therefore, although they do not expressly teach the dyeing of rovings prior to doubling them together, do teach, in the art of woolen textiles, the dyeing of fibers in different colors immediately prior to the production of the rovings. In order to justify the allowance of claims on the basis of such a slight change in procedure it would be necessary to show that some unexpected result was produced.

■ So far as the blending of the colors is concerned, it is evident that the mixture of fibers of different colors before the rovings are made will produce at least as good a blending in the final product as will appellant's process. It is stated in the Hoye affidavit that if wool is dyed in the condition of tops, it is necessary to recomb it before making it into rovings. Neither the Watson nor the Midgley publications make any reference to such a recombing in connection with top dyeing but, even assuming the combing to be necessary, Hoye admits that "In the manufacture of worsted yarns such reprocessing is permissible because of the higher cost of worsted yarns and fabrics." So far as woolen textiles are concerned, therefore, appellant's process involves merely the deferring of the dyeing step to a slightly later stage, with the only advantage, if any, being the elimination of a recombing step which does not involve a prohibitive cost. Appellant's process, so far as it relates to woolen yarn, clearly does not represent the difference between success and failure in the commercial production of blended colors in such yarns. Under the related circumstances, we are of opinion that appealed claims 1, 2, and 3, which are broad enough to cover the production of wool textiles, were properly rejected.

It may be noted that claim 3 does not even state that the fibers are dyed while in the form of rovings, but merely states that the rovings used are of different colors. So far as that claim is concerned, the colors might have been imparted to the rovings by dyeing the fibers of which they are composed while in the form of stock or tops. Claim 3, therefore, does not define a process having any advantage over the stock dyeing or top dyeing of the prior art.

■ Appealed claims 7 and 8 are limited to a process involving cotton or rayon fibers. Although those fibers are generally similar to wool fibers, there is no stage in the processing of cotton or rayon fibers which accurately corresponds to wool in the state of tops, since rayon and cotton fibers, after combing, are too loose and fragile to permit dyeing. Accordingly, the disclosure in the reference of the top dyeing of wool has no direct pertinence to the cotton or rayon art, and the closest approach to appellant's process in those arts is stock dyeing. As compared with stock dyeing, appellant's process has marked advantages, as pointed out in the affidavit of Hoye. One of those advantages is that stock dyeing is practicable only in relatively large quantities, whereas rovings can be dyed in smaller amounts. Another is that a considerable percentage of stock is lost in combing and, if the stock is dyed prior to combing, there is a corresponding loss of dye. Still another is that it is more difficult and expensive to card dyed stock than stock which has not been dyed. In view of those facts, we are of opinion that, so far as cotton and rayon are concerned, appellant's process represents a patentable advance over the prior art, and that claims 7 and 8 should, therefore, have been allowed.

For the reasons stated, the decision of the Board of Appeals is modified, being affirmed as to claims 1, 2, and 3, and reversed as to claims 7 and 8.

Modified.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.