36 C.C.P.A.(Patents)

**Application of FREDERICK.**

**Patent Appeals No. 5606.**

United States Court of Customs and Patent Appeals.

June 28, 1949.

Charles M. Thomas, Washington, D. C., (Edward A. Hampson, Chicago, Ill., of counsel), for appellant.

W. W. Cochran, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Primary Examiner, rejecting all of the claims, 1 to 8, inclusive, and 10 to 17, inclusive, of an application for a patent, serial No. 434,384, filed March 12, 1942, for new and useful improvements in "Concrete Form Lining."

Appellant has moved to dismiss the appeal as to claims 2, 4, 5, 7, 8, 10, 15, 16, and 17, which motion will be granted. The rejection of claims 1, 3, 6, and 11 to 14, inclusive, are presently involved.

All of the involved claims were rejected by the examiner as unpatentable over the following prior art:

| | | |
|---|---|---|
| Andrews | 1,695,837 | December 18, 1928. |
| Heritage et al. | 2,296,553 | September 22, 1942. |
| Brooks et al. | 2,310,391 | February 9, 1943. |

Claims 1 and 3 were further rejected as improperly defining a part of appellant's structure by the use of the expression "nonfabric."

Claims 1, 3, 6, and 14 define the invention and read as follows:

"1. A form lining board comprising in combination a body sheet and a surface sheet, the body sheet and surface sheet at their contiguous faces separably connected one to the other, the body sheet comprising a permeable, air porous sheet of the form of fiber insulation board of a density within the range of about 0.20 to 0.24 and throughout a portion thereof less than the

entire thickness of the sheet extending from the rear face of the body sheet toward the surface sheet the fibers thereof sized and water repellent and the surface sheet comprising a thin foraminous and readily water and air pervious non-fabric particulate film surfacing on the combination form lining board.

"3. As an article of manufacture a composite concrete form lining board comprising in combination a body sheet and a facing sheet, the body sheet comprising an air pervious and water absorptive board form sheet of fiber insulation board of a porosity of between 2 to 6 seconds per 100 cc material and the surface sheet comprising a thin foraminous but continuous non-fabric particulate sheet porous to air and water, the adjacent faces of the body sheet and facing sheet separably adhered one to the other.

"6. A composite concrete form lining board comprising a major body portion thereof characterized by a high content of coarsely fibrous material and a void content of the order of 50 per cent of the mass thereof with an air porosity of between about 2 to 6 seconds per 100 cc and a minor surface portion thereof readily air and water pervious and of a nominal thickness not exceeding about 0.01" and characterized as composed of fiber of the fineness of the order of paper forming fiber.

"14. A composite form lining comprising a surfacing portion composed primarily of paper making fibers and a backing portion composed largely of fibers coarser than paper making fibers, each of such portions, air and water porous and such portions mutually coacting to limit the rate of porosity thereof from the surface to that of about 2 to 6 seconds per 100 cc and the porosity to water to about 1 to 45 minutes for the passage of ½ cc of water applied to the surface."

Claims 11, 12, and 13 add limitations to the form lining defined in claim 8, the appeal as to which has been dismissed. Should the decision of the board be reversed, therefore, those claims will have to be reformed.

The application relates to improvements in a composite form lining, in what is commonly known as a concrete form, used in the casting of concrete. The device consists of a backing of fiber insulation board, to which is attached, by an adhesive, a thin porous paper sheet. The insulation board may be of the conventional type, preferably water repellant, but differing somewhat from conventional fiber board in that its preferred density is 0.20 to 0.24, as compared with 0.30 in the ordinary board of that type.

The use of appellant's form lining is said to result in the production of concrete articles having dense smooth surfaces, free of pits, bugholes or protuberances. It is also said that appellant's form material will not become bonded to the concrete mass within the form.

The ordinary insulation board with sizing throughout may be used as a backing provided that one face thereof be treated with a surface tension reducing or wetting agent, employed for the purpose of eliminating the sizing of the surface to which it is applied, so that one surface of board becomes water absorptive and the other surface remains water repellant.

Appellant discloses, as an equivalent to a porous paper sizing sheet, fine asbestos or cotton fiber placed on the water absorptive surface of the backing while it is being manufactured. It is also said that instead of a water soluble adhesive, non-water soluble glues may be used in spots or lines so as not to materially interfere with water absorptiveness.

The Andrews patent relates to box-board or stock used in constructing food containers and the like. There is disclosed in the patent a board comprising an outer layer of kraft paper attached by a water soluble adhesive to a fiber board.

The Heritage et al. patent relates to a liner for cement and concrete forms. The patentee proposes to employ absorptive material as a liner for concrete forms, whereby the excess water of the mass is removed at the surface lying against the mold, resulting in "case-hardening" of the set concrete. The absorptive material may be a common insulating board made of ligno-cellulose fibers, such as wood, cane, cornstalks, and the like. It is said that

there are difficulties met in the use of such board, one of which is proper control of absorption of water, release of air bubbles at the form surface, and a bonding of the board to the set concrete. That patent aimed to overcome those difficulties and others. It is said that by the use of the liner of the patent, pits on the surface of the concrete are avoided and adherence of the concrete surface to the mold surface will not result. The patentee states that a particular object of his invention is the providing of a wetting agent in the coating of the form liner. It is noted in the patent that numerous coating materials were found to be successful in preventing bonding between the mold and the concrete, and that to permit penetration of the water exuded from the wet concrete, the coating should be sufficiently incomplete so as to leave pores leading into the board, but sufficiently complete to avoid bonding. The patentee recognized that air bubbles are entrapped in the concrete mass, and that they tend to rise while the material is fluid. He noted that air bubbles on concrete surfaces result in pits. He stated that by reason of many experiments he determined to increase the wettability of the surface of his board by adding wetting agents thereto, so that the formation of pits would be avoided. For that reason, he adds a pronounced wetting agent to the coating composition, so as to form a fiber board lining coated with a viscous dispersion of hydrophilic material. The patentee points out that his wet board stock minimizes penetration of the coating into the board, and states that the drying of the wet stock dries the coating and the board from both sides, and that on shrinking the surface fibers are wholly or partially coated, resulting in a facing in which openings are left to the interior of the board.

The Brooks et al. patent relates to absorptive mold lining used in concrete forms. The lining of the patent comprises a fiber board backing to which a water-permeable facing is secured. The facing may be of woven or knitted fabrics made from water-absorbent textiles, such as cotton, linen, rayon, hemp, jute, paper fiber, and the like. It appears that some of the concrete mix penetrates the facing through interstices of the fabric. It is stated in the patent that the facing is not necessarily composed of closely woven material, and that wet form lining using burlap and square-woven paper-fiber is satisfactory.

All of the claims were rejected by the examiner as failing to distinguish patentably over the structure of the Heritage et al. device, it being held that invention was not involved in substituting for the hydrophilic coating of the patent, a facing, such as paper, secured to the fiber board by a water soluble adhesive, as it appears in the Andrews patent.

The examiner further rejected claims 1, 6, and 11 to 13, inclusive, as unpatentable over the mold lining of the Brooks et al. patent for the stated reason that to provide a wetting agent in that molding was considered obvious in view of the patent to Heritage et al.

Claims 3 and 14 were rejected by the examiner for the additional reason that in his opinion those claims are not patentable over the structure of Brooks et al., because the fabric sheet facing disclosed in the patent was considered the full equivalent of the fibrous facing disclosed by appellant.

Claims 1 and 3 were further rejected by the examiner, who held that the term "non-fabric" did not properly define the porous surfacing sheet of the application.

The Board of Appeals agreed with all of the grounds of rejection applied by the examiner.

In the concrete making art it has long been known that wet concrete, as poured into a form, always contains more water than is necessary for the hydration of the cement, and that particles thereof are practically always surrounded by films of water. When the excess water has been evaporated and the concrete is in its hardened permanent form, it is more or less porous. It has also been known that small air bubbles form near the face of poured concrete, which eventually form pits of various sizes in the concrete surface when the air has disappeared and the water has evaporated. It is obvious that such a rough surface may be in many instances undesirable. It is just as obvious, in our

opinion, that workers in the art must have unsuccessfully sought a remedy for that undesirable result in concrete castings, as may be observed from the specifications of the Heritage et al. and the Brooks et al. patents.

Appellant clearly points out in his specification a relatively simple means, which completely solved that problem. For such solution, it was necessary to understand the reason for its existence. He discovered that, in the passage of water from the wet concrete, some of the "very fine cement fines" are suspended in the water as it moves to the surface of the facing sheet of the form lining. With this knowledge in mind, he conceived the idea of placing a film like paper sheet adjacent the wet concrete the pores of the paper being so fine that the pulverulent tiny particles of cement were filtered out on the face of the concrete, while the water and air passed through the sheet into the absorbent fiber board. It naturally would follow, he reasoned, that those cement fines, in that part of the concrete, where air and excess water were removed, packed closely together and that the overall result was that the concrete mass was denser and more compact at its surface than elsewhere in its composition. . We find nothing in the prior art to indicate anything more than that the problem of producing a smooth concrete face was appreciated. The art is silent as to what appears to us to be the essence of appellant's invention, i. e., a concept that the cement fines suspended in water moving through the surface of the concrete could be stopped at the face of the form lining and kept there so as to produce a smooth, pitless surface while the air and water accompanying the fines would pass through the lining.

An examination of the Heritage et al. patent does not disclose appellant's discovery of the source or cause of the defects in concrete castings. We find nothing in that patent whereby the desirability of filtering the cement fines from the water carrying the same, as it passes through a porous facing sheet and is absorbed by the backing, such as is shown by appellant. The patent does not disclose a laminated or composite sheet. The disclosure is limited to the use of conventional fibrous insulation board, coated with a viscous hydrophilic substance. That substance, which is absorbed in the surface fibers of the sheet of the patent, can not be called a surface layer, such as is defined in the involved claims. It is clear that the patentee had the notion that, by applying the hydrophilic coating to his board, the openings between the surface fibers were adjustable to meet any desired result. It is stated in the specification of the patent that "Control of the coating therefore permits control of the rate of absorption through the surface, neglecting the capacity of the interior fibers, and assuming that to be constant. Such control appears to prolong the plastic stage, so that less pitting might be expected." It is further stated by the patentee that "Protein and the like hydrophilic coats swell rather slowly, and this is advantageous, since the mix may be dehydrated before swelling is complete, and then the pores are wholly or partially closed by the later swelling." It appears to us that in the Heritage et al. construction, the cement fines carried by the water must enter into and become concentrated in the pores of the board.

It is true that the Brooks et al. patent discloses the use of an adhesive to unite a surface sheet to the body sheet of his mold lining. There is no disclosure, however, of a body or backing board faced with a finely fibrous paper. The patent discloses an absorbent body sheet of roofing felt or the like, which has bonded to it a textile or fabric sheet, woven or knitted, such as cotton, linen, rayon, hemp, jute, paper fiber, and the like. As has been heretofore noted, the patent emphasizes that coarsely woven material, such as burlap and square-woven paper-fiber cloth, may be used. The surfacing sheet of the patent can not serve to screen or filter the cement fines from the water by entering the relatively large openings or pores of the facing defined in the patent. We find nothing in the Brooks et al. patent which would suggest to one skilled in the art to substitute appellant's facing sheet for the relatively coarse woven or knitted fabric of the patent. Neither of the patents suggests or indicates, nor can it be inferred there-

from, that the concentration of cement fines at a porous surfacing and backing sheet was the reason underlying the bonding of the form to the concrete or cement mass.

Appellant recognized, attacked, and successfully solved a problem, and from an examination of the cited prior art, either singly or in combination, we are of opinion that it is insufficient to suggest to or teach one skilled in the art what has been done by appellant. In re Emmey et al., 161 F.2d 754, 34 C.C.P.A., Patents, 1097; In re Earle et al., 102 F.2d 232, 26 C.C.P.A., Patents, 974.

With respect to the rejection of claims 1 and 3, as not properly defining the porous surfacing of appellant's structure by the use of the term "non-fabric," we can not agree with the tribunals below. In our opinion, a thin foraminous "non-fabric particulate film" which is pervious to air and water, as called for in those claims, is a proper description of the film-like facing disclosed in the application.

Of course anything may be denominated fabric which has been manufactured. Broadly speaking, a locomotive, a pair of shoes, or a mouse trap, under the broad meaning, as contained in the decision, could properly be so denominated. We think that the reasonable meaning to be attached to the use of the term "non-fabric," especially in its context, being coupled with the expression "thin foraminous" and "particulate film surfacing," is capable of no other meaning than that contended for by appellant. The term fabric is defined in Webster's New International Dictionary as, "Anything manufactured—*in modern use, only,* cloth that is woven or knit from fibers, either vegetable or animal; manufactured cloth; a textile fabric; as silks, or other fabrics." (Italics ours.) In Funk and Wagnall's New Standard Dictionary, the term fabric is defined as "A woven, felted, or knitted material for wear or ornament, as cloth, felt, hosiery or lace; also the material used in its making."

The surfacing sheet, capable of practically removing by filtration the cement fines from the water of the concrete, to our way of thinking, is properly defined in claims 1 and 3. It will not do to segregate the single expression "non-fabric" from its context, as has been done by the tribunals of the patent office.

Clearly, no one in the prior art recognized the reason for the surface defects in the casting of cement, and just as certainly no one in the prior art solved the problem.

The appeal with respect to claims 2, 4, 5, 7, 8, 10, and 15 to 17, inclusive, is dismissed, and with respect to claims 1, 3, 6, and 11 to 14, inclusive, for the reasons hereinbefore stated, the decision of the Board of Appeals is reversed.

Reversed.

By reason of illness, HATFIELD, J., was not present at the argument of this case and did not participate in the decision.