40 C.C.P.A. (Patents)

**Application of McKENNA et al.**
**Patent Appeal No. 5956.**

United States Court of Customs and
Patent Appeals.
April 15, 1953.

Clarence B. Des Jardins and Albert F. Robinson, Cincinnati, Ohio (Watts T. Estabrook, Washington, D. C., and Des Jardins, Robinson & Keiser, Cincinnati, Ohio, of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the

Primary Examiner rejecting as unpatentable claims 24 to 27, the only remaining claims in appellants' application for a patent on a "Process for the Explosive Pressing of Powdered Compositions."

The appealed claims relate to a process in the field of powder metallurgy. They are directed to an allegedly novel method of forming and compacting articles to a desired shape from powdered metal mixtures, particularly the hard carbides, nitrides and borides of various metals.

In carrying out the process, the powder mixture, or a loosely compacted mass of powder, is placed in a fluid-impervious sheath, and the sheath is then placed in a pressure chamber filled with fluid. The pressure chamber is designed so that an explosion had having a movable piston may be coupled thereto in sealed relationship, with one end of the movable piston resting against the fluid in the chamber. A charge of powder is placed in the explosion head adjacent the other end of said piston. When the powder is ignited, the resulting explosion drives the piston against the fluid in the pressure chamber, thus creating a pressure which is transmitted by the fluid uniformly in all directions to the sheath-enclosed article in the pressure chamber, thereby uniformly compacting it. The amount of fluid displacement which the piston has made in the pressure chamber, is of course, a measure of the amount that the article has been compacted as a result of the explosion. According to appellants' specification, the best range of pressure for molding hard carbide metal compounds, such as tungsten carbide or other carbides, is between 60,000 to 70,000 pounds per square inch, and the maximum pressure for best results should be developed within the range of 25 to 50 milliseconds. The article thus formed is later "sintered," in a manner well known in this art, to a firmly coherent or cemented condition.

Claims 24 to 27 read as follows:

"24. The improvement in the art of powder metallurgy comprising the surrounding of a powder compact with a body of liquid and subjecting said body of liquid to explosive pressure transmitted thereby uniformly to said compact from all directions, to condense said compact uniformly.

"25. The improvement in the art of powder metallurgy comprising the surrounding of a powder compact with a body of liquid and subjecting said body of liquid to pressure developed to a maximum within the range of 25 to 50 milliseconds, said pressure being transmitted by said liquid to the compact from all directions to condense said compact uniformly.

"26. The process of claim 25 in which the powder compact is separated from the liquid by a pliable rubber envelope enclosing the compact.

"27. The process of claim 26 in which the rubber envelope is evacuated."

The references relied on by the Patent Office are: Johnson (Great Britain) 21,840 A. D. 1897; Madden 1,081,618 Dec. 16, 1913; Duryea et al. 1,371,671 March 15, 1921; McKenna 2,220,018 Oct. 29, 1940.

The Madden patent discloses a process for preparing billets from powdered refractory metals such as tungsten and molybdenum. The powdered metal is put into a closed rubber tube which is placed in a pressure chamber. Water or other fluid is then forced into the chamber under great pressure by a pump and the pressure maintained for a brief period. The pliable tube permits the uniform application of the high fluid pressure to the powdered material in substantially all directions, so that the powdered material is compacted into billets having a high degree of uniformity and strength.

The patent to McKenna, one of the joint applicants herein, discloses a method of compacting articles having tortuous shapes from powdered carbides, nitrides, and borides of metals. That method, insofar as it is pertinent here, is similar to the above-described process disclosed by Madden. The powdered metal is placed in a rubber sheath which is shaped and then placed in the chamber of a hydraulic press, so as to be entirely submerged. It is then subjected to a pressure of 5,000 to 30,000 pounds per square inch to compact the powder into an

article having a relatively dense body. The article so formed is then sintered in the usual way.

Duryea et al. discloses a process for briqueting fragmentary matter such as iron borings. The borings are fed into a cylindrical die closed at one end, a close fitting plunger is entered into the open end of the cylinder, and a preliminary mild pressure is applied thereto to partially compress the borings. Then an explosive charge is fired in the cylinder, by a means not disclosed, so as to drive the plunger further into the die, thereby compacting the material therein under high pressure. It is also suggested that steam or compressed air may be used instead of an explosion to suddenly raise the pressure used to drive the plunger. The reference states that the sudden and practically explosive application of increased pressure causes the individual fragments or particles to slide one upon another and the friction thus occasioned creates an intense heat at the proximate surfaces of the fragments and thereby fuses, welds or coheres those fragments into one mass.

The Johnson patent shows the application of an explosion to drive a piston against a body of liquid which engages a solid metal sheet or tube to press it into an embossing die or to expand portions of it into recesses. Upon oral argument, the Solicitor for the Patent Office conceded that the Johnson reference is somewhat remote, but asserted that it does disclose a means which could be used to carry out the process taught by Duryea et al.

The examiner rejected claims 24 to 26 as unpatentable over either Madden or McKenna in view of either Duryea et al. or Johnson. He noted that the only difference between applicants' claimed process and those shown by Madden and McKenna was that the fluid in the pressure chamber was subjected to explosive pressure in order to compact the powdered matter in the sheath. He held that it would not constitute invention to substitute the explosive pressure developing means taught by Duryea et al. or Johnson for the pump type pressure means used in either Madden or McKenna. The examiner also rejected claim 27 on the sole ground of being vague and indefinite. The latter rejection will be discussed in more detail below.

The board affirmed the examiner's rejections of claims 24 to 27, with one member filing a dissenting opinion as to the affirmance of the rejection of claims 24, 25 and 26. The majority of the board concurred with the examiner's view that no invention was involved in making the "obvious substitution" of explosive forces used in the secondary references for the pump pressure employed to compact the powder masses in the processes of McKenna and Madden. The dissenting member of the board was of the opinion that applicants sought to solve the problem of warpage and nonuniformity by better compacting; that none of the references suggest the problem or how to solve it; and that nothing in the prior art suggests the combined use of explosive and hydraulic pressure, which in his opinion yielded new and unexpected results. For these reasons, he urged that claims 24, 25 and 26 be allowed. All members of the board agreed, however, that the rejection of claim 27 as indefinite should be affirmed.

Appellants contend, as they did before the examiner and the board, that articles compacted by their process have considerably greater and more uniform density than those compacted by processes heretofore known thus yielding less warpage and porosity, and higher strength characteristics in the finished product after sintering, particularly in larger articles; that, for reasons not fully understood, these improved results are due to the use of explosive fluid pressure; that none of the references, singly or in combination, suggests the combined use of explosive and fluid pressure and appellants' combination of references here applied was unwarranted because appellants' process obtains new and unexpected improved results; and that appellants' process is therefore inventive and patentable over the prior art cited.

Appellants submitted an affidavit of John C. Redmond, one of the joint applicants in this case. It appears from this affidavit that Mr. Redmond has had extensive experience in physics and chemistry and has made an

extensive study in the field of cemented hard carbides, having devoted most of his time to that since 1943. He has also testified as an expert in two patent suits involving cemented hard carbide compositions.

Affiant stated that he was fully familiar with the process of the McKenna patent, having seen it in practical operation day by day; that it is fully operative and gives good results when the powder compacts are not too large, but warping, deformation and cracking upon sintering are frequent when the compacts are larger; and that, as a result of investigation, he believes this to be caused by nonuniform density of the pressed powder compact. He stated further that the explosive fluid pressing method of the application here involved has been successfully applied to relatively large members like gas turbine blades, which measurements showed to be of substantially uniform density after compacting and which did not warp, deform or crack upon sintering; that gas turbine blades were pressed using the same maximum pressure (25,000 p.s.i.) under the McKenna method and the explosive pressure method and that those compacted by the former method deformed badly and cracked during sintering, whereas those compacted by the latter method did not. He also stated that the explosive fluid pressing method has been used to press an eighty pound powder compact eight inches high and ten inches in diameter, that measurements showed this compact had identical density throughout of 7.68 plus or minus 0.01, and that he "knows" it has never been possible to achieve such results for large compacts using the McKenna method. Affiant also indicated he attributes the uniform density and better sintering results achieved by the explosive method to the fact that maximum pressure is developed suddenly, within a range of 25 to 50 milliseconds.

■ This court has frequently stated that, in attempting to ascertain the presence or absence of invention, the courts should resort not only to an attempt to determine whether an applicant's novel feature is within the capacity of a skilled mechanic in the art, but also to the history and underlying state of the art at or about the time of the alleged invention, the occasion for it, the advantages and successes it achieves. In re Worrest, 201 F.2d 930, 40 C.C.P.A., Patents, ——; In re Bowden, 183 F.2d 115, 37 C.C.P.A., Patents, 1201; In re Holt, 162 F.2d 472, 34 C.C.P.A., Patents, 1129. Of course the record as to the history of the art before the Patent Office tribunals and this court in an *ex parte* case would almost invariably be less complete, and perhaps less reliable, than that before a court in an *inter partes* infringement suit, due to obvious inherent differences in the nature of the two proceedings; and this is a factor to be considered by us in applying the " 'history of the art' test." In re Worrest, supra [201 F.2d 933].

■ Although there are certain obvious shortcomings in *ex parte* affidavits as proof, it seems to us that such affidavits are clearly one of the few practical methods of presenting a factual record sufficient to form a basis for proper application of the "history of the art test" in this type of *ex parte* proceeding. Indeed, in some cases this court has reversed the Patent Office, relying considerably on affidavits presenting facts which convinced us that the invention of the application had some meritorious advantage over the prior art. In re Burgess, Jr., 167 F.2d 637, 35 C.C.P.A., Patents, 1076; In re Holt, supra. Such *ex parte* affidavits must, of course, be closely scrutinized and weighed with care, it being kept in mind that they may unconsciously and unintentionally be colored as a result of enthusiasm for the subject matter of the application. We think also that an affidavit by an applicant or co-applicant as to the advantages of his invention is less persuasive than one made by a distinterested person. See Ex Parte Coleman, 29 USPQ 378, Bd. of Appeals. However, it is not to be disregarded for that reason alone and may be relied on when sufficiently convincing. See In re Holt, supra, and In re Mock, 117 F.2d 745, 28 C.C.P.A., Patents, 919, wherein this court relied on such affidavits in reversing the Board of Appeals.

It appears from the record that appellants were faced with the problem of compacting powdered metal briquettes of substantially uniform density for relatively large articles

so as to avoid warping, cracking and deforming upon sintering. They solved this problem by using a combination of an explosive force to generate pressure in a liquid surrounding the compact so as to suddenly compress it uniformly in all directions. Furthermore, from the record before us we think appellants' process has important advantages over existing processes, as pointed out in the affidavit by Redmond, the factual portions of which are discussed above.

 We find nothing in the disclosure of McKenna or Madden, which either suggests the existence of the problem or how to solve it; nor do we find any such suggestions in Duryea et al. and Johnson, the secondary references. The mere fact that elements of applicants' process may be found in various patents does not necessarily negative invention. In re Holt, supra. Moreover, the concept of doing a thing, the result of which is new and useful and unexpected, must be considered along with the actual steps of doing it in considering the presence or absence of invention and patentability. In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982. We concur with the dissenting member of the board that appellants have recognized, attacked and successfully solved this problem, achieving new, unobvious and unexpected results in a manner not suggested or disclosed to one skilled in the art by the cited references, either singly or in combination. In re Emile Frederick, Jr., 175 F.2d 462, 36 C.C.P.A., Patents, 1123.

In view of the foregoing, we think the rejection affirmed by the majority of the board is based on an unwarranted reconstruction of the prior art in the light of appellants' disclosure and hence is not proper. In re Bisley, supra. We therefore are of the opinion that claims 24, 25 and 26 define a patentable invention not disclosed by the prior act, and that the majority of the board erred in sustaining the examiner's rejection.

We turn now to consideration of claim 27, which has been rejected as indefinite. We agree with the following statement by the examiner:

" * * * It is well settled that a claim is interpreted in the light of the specification, but it is equally well settled that a claim should be clear and definite. According to the disclosure of this application, any air in the envelope is evacuated before surrounding the envelope with a body of fluid and pressing. To illustrate the indefiniteness of this claim, it is noted that as drawn, the claim reads on and apparently is directed to the method whereby the rubber envelope is evacuated by removing the compacted metal mass after pressing. Accordingly, claim 27 is deemed to be vague and indefinite and is not in accordance with Revised Statutes Section 4888." [1]

For the reasons hereinbefore set out, the decision of the board is affirmed as to claim 27, and reversed as to claims 24, 25 and 26.

Modified.

COLE, J., dissents as to the reversal of the board's rejection of claims 24, 25 and 26.

40 C.C.P.A.(Patents)

---

[1] That part of R.S. 4888 here involved has been carried forward into § 112, Title 35, U.S.C., 1952.