**Application of William E. THOMPSON.**
**Patent Appeal No. 8435.**

United States Court of Customs and Patent Appeals.
March 11, 1971.

Lane, J., dissented and filed opinion.

Charles E. Feeny, Philadelphia, Pa., Frank D. Wolffe, Washington, D. C., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and DURFEE, Judge, United States Court of Claims, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1–3 and 6–9 of appellant's application entitled "Stabilized Polypropylene." [1] No claims have been allowed.

The invention relates to stabilizing substantially crystalline polypropylene from degradation due to environmental factors such as heat, oxygen, and mechanical shear. The stabilizer used is either 2,2'–methylene–bis–(4–methyl–6–tert–butyl phenol) or 2,2'–methylene–bis–(4–ethyl–6–tert–butyl phenol).

Claims 1 and 6 are illustrative:

1. A composition of matter consisting essentially of solid, substantially crystalline polypropylene and a stablizer therefor comprising from 0.1% to 1.5% by weight of a material selected from the group consisting of 2,2'–methylene–bis–(4–methyl–6–tert–butyl phenol) and 2,2'–methylene–bis–(4–ethyl–6–tert–butyl phenol).

6. A process for stabilizing polypropylene against the degradative effects of oxidation, thermal processing and mechanical shear which comprises adding from 0.1% to 1.5% by weight of a material selected· from the group consisting of 2,2'–methylene–bis–(4–methyl–6–tertiary butyl phenol) and 2,2'–methylene–bis–(4–ethyl–6–tertiary butyl phenol), to solid, substantially crystalline polypropylene, mixing said polymer and said material to provide an intimate mixture thereof, melting said mixture and forming shaped articles from said melt.

Claims 1–3 are composition claims and claims 6–9 are process claims. Claim 7, dependent on 6, calls for performing the mixing and melting steps simultaneously. Claims 2 and 8 specify using 2,2'–methylene – bis – (4 – methyl – 6 – tert – butyl phenol), and claims 3 and 9 specify using 2,2' – methylene – bis – (4 – ethyl – 6 – tert–butyl phenol).

The references relied upon by the board are:

| | | |
|---|---|---|
| Pullman | 2,675,366 | April 13, 1954 |
| Csendes | 2,970,128 | January 31, 1961 |
| Salyer et al. (Salyer) | 2,985,617 | May 23, 1961 |
| Montecatini (Australia) | 211,963 | December 8, 1955 |

Additional references relied on by appellant are:

| | | |
|---|---|---|
| Britton et al. (Britton) | 2,525,643 | October 10, 1950 |
| Barnes | 2,576,821 | November 27, 1951 |
| Roussel | 2,721,187 | October 18, 1955 |
| Hayes | 2,844,564 | July 22, 1958 |
| Rosenwald et al. (Rosenwald) | 2,867,604 | January 6, 1959 |
| Spacht | 2,967,853 | January 10, 1961 |
| Konig et al. (Konig) | 2,969,342 | January 24, 1961 |
| Ferner | 3,226,359 | December 28, 1965 |
| Steingiser et al. (Australia) (Steingiser) | 201,160 | January 11, 1956 |
| Burnett et al. (Australia) (Burnett) | 208,596 | June 11, 1957 |

"Modern Plastics," Vol. 37, page 192, January 1960.

Pullman discloses the stabilization of polyethylene against oxidative deterioration by incorporating therein small amounts of alkylene bis–(4,6–dialkylphenols). Among the bis–phenol stabilizers listed are 2,2'–methylene bis–(4–methyl–6–tert–butylphenol) and 2,2'–methylene bis–(4–ethyl–6–tert–butylphenol).

---

1. Serial No. 284,386 filed May 31, 1963 as a continuation-in-part of serial No. 671,120 filed July 11, 1957, which in turn is a continuation-in-part of serial No. 641,453 filed February 21, 1957.

Csendes lists both bisphenols claimed by appellant for use as antioxidants for elastomers.

Salyer relates to the stabilization of "Ziegler type polymers" such as polyethylene, polypropylene, etc., against degradation during thermal processing. A stabilizer for polyvinyl chloride may be used. It is stated that adding a rubber antioxidant in addition to the polyvinyl chloride stabilizer results in a synergistic stabilizing effect. In addition, there is some indication that rubber antioxidants may be used alone. Listed among the rubber antioxidants is 2,2′–methylene–bis–(4–methyl–6–tert–butyl phenol). Salyer states that "[i]n most cases the amount used will be within the range of 0.1 to 2.0 weight percent, i. e., parts by weight rubber antioxidant per 100 parts by weight Ziegler polymer."

Montecatini discloses the preparation of crystalline polypropylene, its properties, and its uses.

Of the references cited by appellant, Britton, Barnes, Konig, and Ferner relate to the stabilization of halogenated hydocarbon polymers. Generally, these references describe attempts, both successful and unsuccessful, to stabilize various halogenated hydrocarbon polymers with a number of different stabilizers.

Roussel, Hayes, Rosenwald, and Spacht are illustrative of the various attempts made to stabilize synthetic and natural rubbers. As in the case of halogenated hydrocarbon polymers, numerous and diverse approaches have been made in order to solve the stabilization problem.

Burnett and Steingiser have been cited by appellant in an attempt to show that the degradation mechanisms of polyethylene and polypropylene are different. Thus, appellant states that Burnett shows that the melt index of nonstabilized polyethylene decreases approximately 95-fold after one hour of milling at 160° C., while appellant's specification indicates that the melt index of nonstabilized polypropylene increases between 9-fold and about 27-fold after 40 minutes of milling at 190° C.

The pertinent part of the cited page of "Modern Plastics" states:

Of all the problems that polypropylene producers have faced, stabilization has been perhaps the most difficult. Polypropylene, when it is unstabilized, deteriorates rapidly upon exposure to heat or ultra-violet light. The difficulty with proper stabilization of polypropylene is that, in general, the vast numbers of stabilizers developed for other polyolefins, vinyl chlorides, and the like proved ineffective for polypropylene.

It was necessary to develop unique systems for specific end uses.

The examiner rejected claims 1–2 and 6–8, i. e., those reading on the use of 2,2′–methylene – bis – (4 – methyl – 6 – tert–butyl phenol) as the stabilizer, under 35 U.S.C. § 102 as anticipated by Salyer. In addition, all claims were rejected under 35 U.S.C. § 103 as unpatentable over Salyer alone or taken in view of Pullman, Csendes, and Montecatini. The board affirmed both rejections. In regard to the § 103 rejection, the board stated that Pullman was relied upon for the teaching that 2,2′–methylene–bis–(4–ethyl–6–tert–butyl phenol), as called for in claims 3 and 9, may be substituted for the corresponding homologous 4–methyl compound specified in Salyer. Montecatini evidently was relied upon to cover appellant's claimed limitation of "substantially crystalline polypropylene" since it is not specified in Salyer whether the polypropylene disclosed is substantially crystalline or not. The board, in its denial of appellant's request for rehearing, disclaimed any reliance on Csendes; therefore, it is unnecessary to further consider that reference. Because Salyer does not disclose the bisphenol of claims 3 and 9 and because there is in all the claims a question of crystallinity for which Montecatini is cited, we prefer to limit our discussion to the rejection of all claims under 35 U.S.C. § 103, which rejection we will sustain. The issues

raised, however, concern only the interpretation of the primary reference, Salyer.

Appellant's position can be summarized as follows: stabilization of polymers is an empirical art; for stabilization purposes polyethylene and polypropylene are not related; the examples in Salyer are limited to polyethylene; and any reference to polypropylene in Salyer is "grossly prophetic." In support of his position, appellant relies heavily on the state of art as illustrated by the references cited by him. Appellant contends, citing at oral argument In re Tomlinson, 363 F.2d 928, 53 CCPA 1421, (1966), that the combined effect of all the art of record, including that cited by him, shows the invention to be unobvious.

In this regard, the Patent Office takes the position that appellant's reliance on the alleged state of the art is without merit because Salyer specifically teaches the stablization of all Ziegler polymers, including polypropylene. As stated by the board:

> We therefore find that Salyer et al. clearly and specifically disclose the application of the stabilizing process, resulting in compositions herein claimed, to all Ziegler polymers * * *. The claims in Salyer et al. coupled with the specific teachings * * * as to propylene homopolymers places in possession of one skilled in this art, appellant's claimed contribution.

■ There can be no doubt that appellant may cite art to show the state of art, and that the state of the art should be considered in determining if the invention would have been obvious to one of ordinary skill in the art at the time the invention was made. In re McKenna, 203 F.2d 717, 40 CCPA 937, (1953). However, after considering all the art cited, we are not persuaded of reversible error in the board's decision.

■ As appellant stated at oral argument, In re Tomlinson, supra, deals with the same art area and closely related issues. There we held that, in view of the state of the art, it would not be obvious to merely select any of the ultraviolet light stabilizers for polyethylene for use with polypropylene, and we reversed as to those claims directed to using cobalt dithiocarbamate stabilizers since the art taught using such stabilizers only for polyethylene. If the art here taught using the claimed bisphenol stabilizers only for polyethylene, we might be likewise disposed to reverse since the same empirical art is involved. However, the teaching of the art in this case, specifically Salyer, is not so limited. In Tomlinson, this court went on to affirm the rejection of those claims directed to using nickel dithiocarbamate stabilizers since one reference specifically disclosed using such stabilizers for polymers including polypropylene. In our opinion, Salyer provides the same type of teaching in this case.

Appellant apparently would have us believe that because Salyer used only polyethylene in the examples while broadly disclosing several polymers and because the art cited by appellant indicates that there may be some problems in stabilizing polypropylene, one of ordinary skill in the art would conclude that the teaching in Salyer of using polypropylene is "accidental" and in error. After thoroughly analyzing the Salyer reference, we fail to see how one of ordinary skill in the art would come to such a conclusion. Salyer, in a number of places, emphasizes the use of the disclosed stabilizers with "all Ziegler type polymers" and states that "[o]ther ethylenically unsaturated hydrocarbons whose Ziegler polymers are of potential interest include propylene, butylenes, especially butene–1, amylenes and the like" (emphasis added). In addition, even the broad claims in Salyer call for stabilizing a polymer "obtained by the polymerization of an unsaturated olefinic hydrocarbon monomer of 2 to 3 carbon atoms," which covers only polyethylene and polypropylene, and claim 11 of Salyer is specifically limited to polypropylene. Under such circumstances, we consider it extremely doubtful that one skilled in the art would read

the disclosure of polypropylene in Salyer as "accidental."

Nor do we think that the various references cited by appellant detract from the teachings of Salyer. The majority of the references merely indicate that some stabilizers do not work with halogenated hydrocarbon polymers and with rubber. The "Modern Plastics" reference does indicate that stabilizing polypropylene is not easy and that many known stabilizers for other polyolefins, etc., do not work. However, none of this indicates to us that one of ordinary skill in the art would assume that because some stabilizers, including some of those used for polyethylene, do not work in polypropylene, Salyer must not be serious or must be in error in disclosing the stabilization of polypropylene as well as polyethylene. Rather, we think the more likely assumption to be that Salyer had overcome the problems of stabilization of Ziegler polymers including polypropylene by use of the disclosed stabilizers. As stated by the examiner in his Answer, "[a]lthough appellant refers to the teaching of Salyer et al. as 'prophetic', it is submitted that the claims on appeal merely demonstrate the validity of the alleged 'prophesy.'"

It is clear to us that the Salyer disclosure places the suggestion of stabilizing polypropylene with 2,2'–methylene–bis–(4–methyl–6–tert–butyl phenol) in the possession of one skilled in the art. From this teaching, and in combination with the teachings of Pullman and Montecatini, we conclude that the invention claimed would have been obvious to one of ordinary skill in the art.

Finally, appellant argues that process claims 6–9 are directed to a "new use" of the composition of claims 1–3 and are patentable even if claims 1–3 are not. The Patent Office's position is that the process of mixing the polymer and stabilizer, melting, and forming shaped articles from the melt is obvious from the teaching in Salyer of using the mixed polymer and stabilizer for substantially the same purpose. In disclosing the methods of mixing and then using the mixture, Salyer states:

> * * * [T]he stabilizer should be intimately admixed with the polymer, and this can be done by milling it in on hot or cold mill rolls as the nature of the polymer permits, by mixing it in by the use of Banbury mixers or other well-known devices of this nature, or it may be mixed with a molding powder and incorporated during extrusion or during injection molding, or may be incorporated into a solution of the polymer which solution may then be employed for the formation of films, for wet or dry spinning of fibers, monofilaments, and the like. The stabilizer may be added as such or may first be dissolved in a suitable solvent as the particular mixing procedure warrants. In any event, it is quite desirable to incorporate the stabilizer with the polymer when the latter has undergone as little thermal processing as possible.

We agree with the Patent Office that, in view of this teaching in Salyer, the mixing and forming process of claims 6–9 would have been obvious to skilled artisans.

Therefore, we affirm the decision of the board.

Affirmed.

LANE, Judge (dissenting).

I cannot agree that on consideration of *all* the pertinent prior art the claims on appeal were obvious. While Salyer alone might lead one to conclude that Salyer's stabilizers for polyethylene would also stabilize polypropylene, I believe that a person of ordinary skill reading all the references would not be reasonably certain that this would be the fact. Under these circumstances I do not see how one can conclude that the claimed compositions and processes were obvious. I therefore dissent.