## In re HAMILTON.
### Patent Appeal No. 3128.

Court of Customs and Patent Appeals.
April 17, 1933.

BLAND, Associate Judge, dissenting.

Townsend & Decker, of New York City (Lee B. Kemon, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Pat-

ent Office, affirming the decision of the Examiner, rejecting claim 3 of appellant's application for want of invention over the prior art; claims 1, 2, 4, and 5 were allowed by the Examiner.

The claim in issue reads as follows: "In a fire extinguishing system provided with a booster pump for maintaining effective pressure in the distributing piping, and with means responsive to a thermostatically controlled decrease of pressure in the system for bringing the pump into operation, automatic and periodically operating testing means therefor comprising a valve connected with the system and normally closed and means acting automatically and independently of any supervisory act on the part of an attendant for periodically or at regularly recurring intervals opening and then closing said valve said means acting independently of the pressure conditions in the distributing piping and means responsive to increase of pressure due to the operation of the pump thus brought about for indicating the operation thereof."

The references relied upon are: Brooks, 1,598,238, August 31, 1926; Lang, 1,606,245, November 9, 1926; Knight, 1,633,107, June 21, 1927; Knight, 1,633,108, June 21, 1927.

The alleged invention covered by the claim on appeal is described in the brief of the Solicitor for the Patent Office in the following terms: "The application relates to booster pump apparatus for fire-extinguishing systems including supply main A feeding riser E supplying the fuse-controlled sprinkler heads W. The starting gauge G controls the starting and stopping of the electric motor L which drives the booster pump D, the function of which is to increase the water pressure when necessary. An automatic testing device is provided including a valve R periodically opened and closed by automatically operating device T. The pressure changes affect a second pressure device N, the lower pressure closing contact K and actuating indicating device I while a higher pressure caused by proper operation of motor L and the booster pump closes contact K and actuates indicating device I."

The specification of appellant relates that heretofore it has been the practice for a central supervising station operator to make periodical tests to determine from time to time that the booster pump apparatus was in working condition. This procedure, appellant indicates, is subject to two objections: (1) That the making of the tests is purely at the discretion of the operator; and (2) that a system of indicating circuits was necessary from each installation to the central station. His objective in the present device is to remove the possibility of failure to test upon the part of the operator, thus safeguarding life and property, and also to obviate the necessity of special supervising and signalling circuits.

The appealed claim was rejected by the Board of Appeals on the ground that all of the structure claimed therein except the "automatically and periodically operating testing means" was found in the reference Knight; that, while Knight discloses manually operated testing means, inasmuch as the references Lang and Brooks disclose automatic control of the operating of a lawn sprinkling mechanism, there would be no invention in changing the manual control shown by Knight to an automatic control.

We agree with the findings of the Board with respect to the disclosures of the references, but we are unable to agree that the substitution for a manual control shown by Knight of a control such as shown by appellant does not involve invention.

It is true, as argued by the Solicitor for the Patent Office, that a mere statement that a device is to be operated automatically instead of by hand, without a claim specifying any particular automatic mechanism, is not the statement of an invention. This court has so held. In re Rundell, 48 F.(2d) 958, 18 C. C. P. A. 1290; In re Gill, 36 F.(2d) 128, 17 C. C. P. A. 700.

The element of the claim involving this point reads: " * * * Means acting automatically and independently of any supervisory act on the part of an attendant for periodically or at regularly recurring intervals opening and then closing said valve. * * *"

It will be observed that this element does not call merely for the substitution of automatic opening and closing of a valve which had theretofore been performed by hand, but in addition the means embrace the certain opening and closing of the valve periodically or at regularly recurring intervals. It is not therefore merely a substitution of automatic means for an operation which had theretofore been performed by hand, and for that reason we do not think that the cases of In re Rundell, supra, and In re Gill, supra, are applicable here.

Apparently the Board of Appeals was of the opinion that said cases were not applicable, for neither of them is cited, nor is there any expression in its decision that the claim

is not allowable upon the ground that it specifies broadly an automatic means for doing something previously done manually. The Solicitor in his brief makes this contention, but both the Board and the Examiner rejected the claim wholly upon the references.

Before leaving this branch of the case, we would observe that in the case of Bre.mahan et al. v. Tripp Giant Leveller Co., 102 F. 899, the Court of Appeals for the First Circuit held valid a claim reading as follows: "A machine for beating out the soles of boots and shoes, provided with two jacks, two molds, and means, substantially as described, having provision for automatically moving one jack in one direction while the other is being moved in the opposite direction, whereby the sole of the shoe upon one jack will be under pressure, while the other jack will be in a convenient position for the removal of the shoe therefrom."

In said case, like the case at bar, all of the elements claimed were old, but invention was found in the provision for automatically moving the jacks, although no specific mechanism for such automatic movement was set out in the claim.

We next proceed to consider the ground of rejection of the claim upon the references relied upon by the Board of Appeals. The question is whether one skilled in the art, having all the references before him, could, without the exercise of invention, so modify the Knight structure as to embody the element of providing means for periodically, or at regularly recurring intervals, opening and then closing the valve described in said claim, said means acting automatically.

Both Brooks and Lang show devices acting automatically and periodically, or at regularly recurring intervals, in the operation of lawn sprinkling systems. Both of the Knight references and appellant's application relate to testing apparatus for fire extinguishing systems. We do not think there is any analogy between testing apparatus for fire extinguishing systems and operating apparatus for lawn sprinkling systems, but, however this may be, we doubt that it would be obvious to one skilled in the art, upon having the four patents cited as references before him, to modify Knight by incorporating therein the automatic operating device shown by Lang and Brooks.

The prior art with relation to the testing of a fire extinguishing system was dependent upon the human element to faithfully and periodically subject the system to certain tests in order to determine its opera-

tiveness. Error upon the part of a manual operator might involve the loss of lives and property. Appellant realized this was a serious defect in the prior art, and that life and property would be safer if the liability to such human error could be obviated. The discovery of defects in the prior art is often a very essential element in an invention correcting such defects. Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

When the defect is realized, it may be a very simple matter to utilize old elements to remedy it, but, when a new and useful result is secured, invention is not negatived by the fact that the elements employed are separately old. The Solicitor for the Patent Office in his brief states: "It must be conceded that the automatic control is advantageous and probably advances the practical art." This is unquestionably true, but we think that it can hardly be said, as held by the Board, that invention is lacking in appellant's application upon the reference Knight in view of either Brooks or Lang. At least, there is in our minds sufficient doubt upon the matter that, in accordance with the general rule, such doubt should be resolved in favor of the applicant.

The decision of the Board of Appeals is reversed.

Reversed.

BLAND, Associate Judge, dissents.