43 C.C.P.A.(Patents)

**Application of Benjamin GRUSKIN, deceased, by Irma Kelly Gruskin, Executrix.**

**Patent Appeal No. 6205.**

United States Court of Customs and Patent Appeals.

June 20, 1956.

————◆————

George B. Finnegan, Jr., New York City, for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Com'r of Patents.

Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON (retired), Judges.

494

JOHNSON, Acting Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting, as unpatentable claims 4 through 6 and 8, 9, 10, 13, and 14 of appellant's application entitled "Dentifrice."

The appealed claims relate to a dentifrice composition containing a small amount of water-soluble chlorophyll and an inorganic salt of low solubility which has both an abrasive and an acid-neutralizing quality. It is brought out in the specification that many dental and oral illnesses occur because of an acid condition of the mouth. It is also set forth in the specification that "amounts of chlorophyll as small as .02% have been found sufficient to contribute therapuetic and cell-stimulating properties." However, the specification states that " * * * chlorophyllin salts are soluble in water, but are precipitated from their solutions by acid if the pH falls sufficiently low, e. g., below about pH 5." Relative to the function of the inorganic salt, it is recited in the claims: " * * * said salt being in an amount sufficient to impart an abrasive action to said composition and at the same time maintain the pH of said composition sufficiently high to maintain said water soluble chlorophyll in its water-soluble and therapeutically effective form." It appears to be implied in the specification, although not specifically stated, that when the water-soluble chlorophyll salts are precipitated because of the acid environment of a diseased area, they lose their therapeutic effectiveness. In view of the foregoing, it appears that the concept behind the composition sought to be patented is that the basic salt present in the dentifrice neutralizes the acidic environment of the diseased areas and thus maintains the chlorophyll in its therapeutically effective form.

Claims 8 and 14 are considered representative of those appealed, and read as follows:

"8. An acid-stabilized dentifrice composition substantially free of water-insoluble precipitated chlorophyll both in storage and in use, the treatment of gingival conditions thereapeutically [sic] effective in containing as essential ingredients an inorganic acid neutralizing salt of relatively low solubility in water and 0.02 to 3% by weight of a water soluble chlorophyll, said salt being in an amount sufficient to impart an abrasive action to said composition and at the same time to maintain the pH of said composition sufficiently high to maintain said water soluble chlorophyll in its water soluble and therapeutically effective form.

"14. An acid-stabilized dentifrice composition, substantially free of water-insoluble precipitated chlorophyll both in storage and in use, therapeutically effective in the treatment of gingival conditions containing as essential ingredients an inorganic acid neutralizing abrasive salt of relatively low solubility in water and from about 0.1% to 0.2% by weight of a water soluble chlorophyll, said salt being in an amount sufficient to impart an abrasive action to said composition and at the same time to maintain the pH of said composition sufficiently high to maintain said water soluble chlorophyll in its water soluble and therapeutically effective form, the abrasive salt being coated with or having an absorbed layer of the water soluble chlorophyll."

The references relied on are:

| Brady | 1,551,638 | Sept. 1, 1925 |
| Brownlee | 1,645,852 | Oct. 18, 1927 |
| Vogt | 1,691,504 | Nov. 13, 1928 |
| Elbel | 2,054,742 | Sept. 15, 1936 |
| Gruskin | 2,120,667 | June 14, 1938 |
| McDonald | 2,225,284 | Dec. 17, 1940 |

Welwart—"Antiseptics for Tooth Pastes", The Mfg. Chemist, Feb. 1933, pages 45 and 48.

Bennett—"The Cosmetic Formulary", N.Y. 1937, page 211.

"How the General Practitioner of Dentistry May Prevent and Cure Pyorrhea", by

Bruce L. Taylor, The Dental Cosmos, Vol. LXXI, Oct. 1929, pages 954–959.

The Brady patent teaches the use of calcium carbonate in a toothpaste because of its abrasive and antacid qualities. It also discloses that formalin is used as an antiseptic in toothpaste.

The Brownlee patent discloses a dentifrice containing calcium carbonate and an antiseptic, such as ethyl iodide, which is capable of exercising a mild antiseptic action without injuring the mouth or the gums.

The Vogt patent, insofar as pertinent, discloses that a toothpaste may consist of calcium carbonate and small quantities of mild aromatic antiseptics such as menthol, thymol, or eucalyptol which impart germicidal qualities in addition to a pleasing taste.

The Elbel patent, insofar as pertinent, discloses a toothpaste containing calcium carbonate and menthol.

The Gruskin patent relates to the use of water-soluble chlorophyll for the treatment of infections. It is stated in the specification, " * * * water soluble chlorophyll, present locally in an infected area and in a suitable form, will cause the gradual attenuation of the bacteria there present until they finally leave the area. At the same time the formation of granulation tissue will be enhanced with the result that healing will take place rapidly."

The McDonald patent relates to a composition for the treatment of gingivitis, pyorrhoea, and trench mouth. The composition includes a substance identified as "auramine" which is active as a germicide, protozoacide, and amoebacide.

The Welwart publication, insofar as pertinent, discloses the use of various substances as antiseptics for toothpaste. It is further stated in the article: "Preparations for the care of the mouth and teeth should therefore aim at preventing propagation of bacteria as well as neutralising any organic acids which may form."

The Bennett publication discloses that toothpastes in addition to consisting of soaps and cleaners, carriers and softeners, binders, and other ingredients, also include abrasives such as chalk and magnesium carbonate.

The Taylor publication was used by the Board of Appeals to show that in many cases of gum inflammation the irritated areas are acidic.

Relative to the prior art, the Primary Examiner rejected the appealed claims on various grounds. All of the claims were rejected "for lack of invention over any of Welwart, Brownlee, or McDonald as considered with Gruskin and Bennett." The substance of the rejection was: "To use the chlorophyll of Gruskin, instead of the germicide or antibacterial agents shown by Welwart, Brownlee or McDonald, with other conventional agents shown by Bennett would not amount to invention."

The Primary Examiner also rejected all the claims "for lack of invention over Vogt, Brady, or Ebel [sic] in view of Gruskin." In this respect, the examiner stated: "The Gruskin patent was previously discussed. The remaining patents show calcium carbonate, detergent and antiseptics and germicides. Brady specifically mentions that calcium carbonate is both abrasive and acid neutralizing. To use Gruskin's chlorophyll in the old combination for its intended purpose is therefore uninventive."

In addition to the above rejections on the prior art, the Primary Examiner also rejected all of the claims on the ground of *rès judicata*. It appears from the record that claims in a parent application, of which the present application is a continuation-in-part, were rejected by the Primary Examiner, and that this rejection was affirmed by the Board of Appeals. A subsequent civil action resulted in a dismissal of the case with prejudice as to the claims then on appeal. The examiner held that the claims now on appeal are not patentably distinct from those involved in the civil action, and that *res judicata* therefore applied to the pres-

ent claims. In this respect, the examiner stated:

"* * * The typical claim 3 of the old case merely recited an abrasive. The typical claim herein recites a neutralizing salt of low solubility in sufficient quantity to impart abrasive action and maintain the high pH of the paste. Specifically this compound is calcium carbonate. This was a specific example in the earlier case. The claim recites that the calcium carbonate should be present in sufficient concentration to act as an abrasive. This is implicit in the recitation of the abrasive in the prior case. In any concentration necessary to attain abrasive action the calcium carbonate exhibits the acid neutralizing action.

"The only additional limitation actually raised for the first time by the new claims is therefore the statement of the theory of action of the chalk (calcium carbonate). This issue does not avoid the ground of *res judicata*. Litigation would never be terminated if applicant could obtain a new hearing because he propounds a different theory.

"The statement of a theory does not raise a significantly different ground because the basic issue of invention over the art remains the same. Stating the theory does not define a different combination. The basic issue raised by both sets of claims is thus essentially the same and the res judicata applies. * *"

The Board of Appeals affirmed the rejections made by the examiner and substantially adopted the examiner's reasons. However, the board specifically mentioned that it affirmed the rejection of the claims "over Brownlee in view of Gruskin" in addition to affirming the rejections given by the examiner. The board also mentioned the Taylor article for disclosing that a gingival infection is acidic, and then stated:

"* * * Such being the case it appears to us that it would be the

obvious thing for one skilled in the art who was compounding a dentifrice for use in combatting gingivitis, to include an antacid in the composition. Calcium carbonate is an outstanding example of an antacid, as indicated by Brady (page 2, lines 27–30). Calcium carbonate is also an abrasive, and as the Examiner has pointed out it appears to be one of the most popular of all abrasives used in dentifrices. We note that Brownlee (lines 21–24, page 2) also recognizes the absorptive property of calcium carbonate for the antiseptic ingredient of the composition. We are not persuaded that appellant's selection of calcium carbonate (or the other members of the class recited in claim 9) in preference to a chemically inert and non-absorptive abrasive amounted to invention."

The substance of the board's reasoning in affirming the rejections on the prior art was that the prior patents showed calcium carbonate (an abrasive and antacid) to be well known and commonly used in toothpastes; that various germicides were commonly used in toothpastes; and that there would be no invention in replacing the germicides of the prior art with the chlorophyll of Gruskin.

The Board of Appeals also affirmed the examiner's rejection of the claims on the ground of *res judicata*. In so doing, the board held that the instant claims were not patentably distinct over the claims which were involved in the prior civil action.

There are two questions before us on appeal. The first question is whether appellant is barred from obtaining the appealed claims because of the rule of *res judicata*. The second question is whether the appealed claims are patentable over the cited prior art.

 We will first consider the question of *res judicata*. It has been held by our court that the mere fact that an appellant's earlier appealed application would have supported claims on appeal in a subsequent case had they been pre-

sented in the former does not in itself render the claims in the latter rejectable on the ground of *res judicata*. In re Prutton, 204 F.2d 291, 40 C.C.P.A., Patents, 975. When a subsequent civil action has been dismissed, as is the case here, a prior decision of the Board of Appeals becomes a final decision as to all subject matter actually contained in the claims, and an appellant is bound thereby. In re Ellis, 86 F.2d 412, 24 C.C.P.A., Patents, 759. However, if presently appealed claims are *patentably different* from the subject matter of the claims in the prior application, an appellant is entitled to have the present claims considered on their merits. In re Prutton, supra; In re Ellis, supra.

In view of the foregoing law, we must first consider whether the claims now on appeal are patentably different from the appealed claims of the prior application. Claim 8, which is representative of the claims presently on appeal is quoted above. Claim 3 of appellant's prior application, Serial No. 466,299, filed November 20, 1942, was considered by the examiner as representative of those appealed in the above-mentioned Civil Action. We will consider it likewise. It reads as follows:

"3. An oral therapeutic preparation comprising a water soluble chlorophyll in therapeutically effective amounts and also comprising in addition to the chlorophyll, a liquid and at least one other ingredient of oral cleansing preparations selected from the group consisting of detergents, abrasives, flavoring materials and hygroscopic agents."

█ A comparison of presently appealed claim 8 and prior appealed claim 3 indicates the following pertinent difference: Claim 8 recites " * * * an inorganic acid neutralizing salt of relatively low solubility in water * * * said salt being in an amount sufficient to impart an abrasive action and at the same time to maintain the pH of said composition sufficiently high to maintain said water soluble chlorophyll in its wa-

ter soluble and therepeutically effective form." On the other hand, prior appealed claim 3 recites " * * * at least one other ingredient of oral cleansing preparations selected from the group consisting of detergents, abrasives, flavoring materials and hygroscopic agents." The examiner was of the opinion that there was no patentable difference between the above portions of the claims, his reasons being quoted above. However, it is to be noted that the examiner did not confine himself to the specific subject matter recited in the prior-appealed *claims* when he stated that calcium carbonate was a specific example in the prior case since calcium carbonate did neither appear in the claims of the prior case nor were its antacid qualities recited. In short, the prior appealed claims merely recited the presence of an abrasive but not an antacid abrasive, and in our opinion there was error made in referring to the contents of the earlier patent specification in applying the rejection of *res judicata*.

We are of the opinion that the claims now on appeal are patentably distinct from the prior appealed claims. Above cited claim 3 in no way indicated that there should be an antacid present in the composition or that the abrasive should be antacid in order to maintain the chlorophyll in its therapeutically effective form both in storage and in use. Appealed claim 8 recites these features. We think that the reasons why this difference is inventive are so inextricably related to the reasons for holding the appealed claims patentable over the prior art that it would be redundant to treat each of these facets of the case separately.

Therefore, at this point we will answer the question of whether the claims are patentable over the cited prior art.

█ It is to be noted that the appealed claims were rejected by using various combinations of references. It is of course well settled that prior patents may be combined for the purpose of showing that a claim is unpatentable.

In re Delancey, 177 F.2d 377, 37 C.C.P.A., Patents, 760; In re Williams, 223 F. 2d 291, 42 C.C.P.A., Patents, 988. It is also well settled that claims may be properly rejected on a combination of several patents taking specific features from each. In re Lindberg, 194 F.2d 732, 39 C.C.P.A., Patents, 866; In re Kamlet, 185 F.2d 709, 38 C.C.P.A., Patents, 776. However, when references are combined, it should be considered whether the references suggest doing the thing which an applicant has done. In re Fridolph, 134 F.2d 414, 30 C.C.P.A., Patents, 939; In re Dalzell, 152 F.2d 1013, 33 C.C.P.A., Patents, 808. Furthermore, when references are combined to negate patentability, it should also be considered whether one skilled in the art with the references before him could have made the combination of elements claimed without the exercise of invention. In re Goepfrich, 136 F.2d 918, 30 C.C.P.A., Patents, 1181. We summarized the holdings of the foregoing cases in our recent case of In re Shaffer, 229 F.2d 476, 479, 43 C.C.P.A., Patents, 758, in the following words:

"* * * it is not enough for a valid rejection to view the prior art in retrospect once an applicant's disclosure is known. The art applied should be viewed by itself to see if it fairly disclosed doing what an applicant has done. If the art did not do so, the references may have been improperly combined."

■ In the light of the foregoing law, we will now proceed to analyze the rejections which were applied to the appealed claims. The substance of these rejections is that since it is well-known that calcium carbonate is an antacid and abrasive and is commonly used for these purposes in toothpastes, and since it is also common to use germicides and antiseptics in combination with the above-mentioned antacid-abrasive, and since it has been taught by the prior art that soluble chlorophyll enhances the healing of diseased tissue, it would involve no invention to substitute chlorophyll for the antiseptics and germicides of the prior art toothpastes which also employ calcium carbonate, a known antacid-abrasive.

■ However, it should be considered whether the references themselves would have taught to one skilled in the art that they could be combined to give appellant's toothpaste. Thus while the references teach the use of a combination antacid-abrasive, the use of antiseptics in toothpaste, that water-soluble chlorophyll is a healing agent, and that diseased mouth tissue is acidic, there is no teaching in the references that the acid environment produced by diseased mouth tissue will cause water-soluble chlorophyll to lose its therapeutic effectiveness. We are therefore of the opinion that there' is nothing in the references which would have suggested to one skilled in the art that the above teachings could have been combined to give appellant's toothpaste in spite of the fact that the actual substances disclosed in the references, if combined, inherently give a toothpaste having the characteristics of appellant's toothpaste. Thus it is our opinion that the references were improperly combined, and that the rejection based on the combination is erroneous.

We have held in the past that the discovery of a problem calling for an improvement is often a very essential element in an invention correcting such a problem. In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982; In re Hamilton, 64 F.2d 141, 20 C.C.P.A., Patents, 987; In re Krodel, 223 F.2d 285, 42 C.C.P.A., Patents, 993. Therefore, since the cited prior art does not appear to have been cognizant of the problem that when chlorophyll salts are placed in an acidic environment, they lose their therapeutic effectiveness, it can hardly be said that the references would have suggested that an acidic environment could be neutralized by the use of an antacid in order to maintain the therapeutic effectiveness of the chlorophyll. Furthermore, the prior art of record, Gruskin, which taught the use of chlorophyll for general purposes, stated: "Effort is made to maintain fresh chlorophyll solution continually in the region of the infected area

for relatively long periods of time. For instance, the wet dressing treatment may be applied twice daily, although no deleterious effect has been noted when the present solutions are applied continually." The Gruskin patent also teaches the use of unguent chlorophyll preparations which may be spread on the infected area. It can be seen that these modes of application might be rather troublesome when used for treatment of diseases of the mouth, whereas the application of the chlorophyll by the use of toothpaste can be a routine procedure. Thus we are of the opinion that appellant has not only disclosed a composition in which the chlorophyll will remain in its soluble therapeutically effective form in the oral cavity, but at the same time has disclosed a convenient and effective manner of applying the chlorophyll. We are of the opinion that appellant has recognized, attacked, and successfully solved a problem, achieving unobvious and unexpected results which were not suggested or disclosed to one skilled in the art by the cited references, either singly or in combination. In re McKenna, 203 F.2d 717, 40 C.C.P.A., Patents, 937; In re Emile Frederick, Jr., 175 F.2d 462, 36 C.C.P.A., Patents, 1123, and cases cited therein.

In view of the foregoing, we think that the rejection affirmed by the board is based on an unwarranted reconstruction of the prior art in the light of appellant's disclosure and hence is not proper. In re Bisley, supra; In re McKenna, supra.

It is to be noted that we have only treated claims 4, 5, 6, 8, 9, 10, 13 and 14 in this opinion. Claims 11 and 12 which were also in the case were "dismissed" by the Board of Appeals, evidently on the theory that they were not readable on the elected species.

We have carefully considered all of the other contentions made by appellant but in view of our decision, find it unnecessary to discuss them.

For the foregoing reasons, the decision appealed from is *reversed* as to claims 4, 5, 6, 8, 9, 10, 13, and 14, and the case is *remanded* for a consideration of claims 11 and 12 in a manner not inconsistent with this opinion.

Reversed and remanded.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL, Judge, because of illness, did not participate in the hearing or decision of this case.