50 CCPA

**Application of Wallace A. SHELBY, Jr.**

**Patent Appeal No. 6888.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1963.

Martin, Judge, and Worley, Chief Judge, dissented.

Harry B. Keck, Pittsburgh, Pa., H. H. Robertson Company, Ambridge, Pa., for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

Appellant has appealed from the decision of the Board of Appeals of the Patent Office, affirming the primary examiner's rejection of claims 1, 4, 6 and 8 of the appellant's patent application [1] entitled "Cellular Floor Construction", as "unpatentable over" certain prior art. In his brief appellant has waived appeal with respect to appealed claims 4, 6 and 8. Therefore, only claim 1 remains to be considered in this appeal.

At the outset, some confusion in connection with this appeal can be avoided if we first determine the exact nature of the rejection upon which we are here required to pass. The examiner and the board have not stated specifically whether the rejection is based on 35 U.S.C. § 102 as an old combination or on 35 U.S.C. § 103 as an invention which would have been obvious to one of ordinary

1. Serial No. 745,699, filed June 30, 1958.

skill in the art. From a review of the final rejection, the examiner's answer, the opinion of the board and a consideration of the nature of the claimed invention and the references cited, we have concluded that the rejection is based on 35 U.S.C. § 103 and this opinion will consider the rejection on this basis only.

The disclosure of appellant's invention set forth in this specification shows that it is concerned with cellular flooring, employed in sections or panels, that may be joined at their sides and ends to form an entire floor structure. Each section or panel consists of two elements, an upper element and a lower element, and either one or both elements may be provided with spaced, lengthwise parallel channels. Both the upper and lower elements are spot welded together along their contiguous web surfaces between the channels forming enclosed cells. The lower member is provided with a plurality of generally U-shaped openings in a portion of the webs contiguous with the upper member. The U-shaped openings define correspondingly shaped integral tongues adapted to be bent downwardly from said lower member. An illustration from appellant's brief showing the use of cellular flooring is reproduced below:

According to the specification, the cellular flooring provides permanent conduits for electrical wiring, may be coated with fireproofing material, may support poured concrete floors and also may support a subjacent ceiling and ductwork. Appellant's invention herein is an improvement over the prior methods used for hanging subjacent ceilings and ductworks. The prior methods, as shown by a patent to Graves, the primary reference, consist of drilling holes through the two elements prior to pouring the concrete and suspending a hanging member such as a length of heavy wire or threaded stud to support subjacent structures. In the flooring of the present application, the integral tongues which are provided may be bent downwardly as and when desired to provide supporting means at any location. Figure 3 of appellant's drawing which illustrates his improved construction is reproduced below:

**FIG. 3**

The advantages in the disclosed construction have been summarized in appellant's brief as follows:

1. No additional metal is required in the cellular flooring section to provide the bendable metal tongues.

2. The tongues, being positioned between the cells, do not present any openings in the cell walls which might be objectionable from the viewpoint of electrical code requirements.

3. By providing tongues solely in the bottom element of the two-sheet flooring section, there is no possibility of wet concrete dropping through any holes—since the upper sheet of the flooring section is imperforate.

4. The bendable metal tongues may be provided along the entire length of the flooring sections between each pair of cells. Hence the number of available suspension sites exceeds any suspension requirements.

5. The bendable metal tongues remain flat against the metal flooring sections during transit and hence do not require any additional shipping volume—i. e., the flooring sections can be nested into the same volume of space as the prior art flooring sections.

6. The bendable metal tongues are activated (i. e., bent downwardly) when needed and hence do not present any dangling hazards to personnel working in the space of the floor-beneath.

7. The even distribution of the bendable metal tongues over the surface of the flooring section assures the builder that there will be a convenient anchor-site for any apparatus which may be required during construction or after the completion of the building.

Claim 1 is as follows:

"1. In a sectional cellular floor comprising an upper element and a correlative lower element secured thereto, at least one of said elements having lengthwise, parallel channels forming enclosed cells with the other element, the improvement in said lower element comprising a plurality of generally U-shaped openings each defining a tongue adapted to be bent downwardly, and means carried by said tongue for receiving depending supporting members, said generally U-shaped openings being disposed in a portion of said lower element contiguous with said upper element."

The board's rejection is based on the following references:

Escher      904,856   November 24, 1908
John        2,235,883 March 25, 1941
Graves      480,452   January 22, 1952
(Canada)

The Graves' patent discloses a concrete covered cellular metal flooring of the same general type as that shown by appellant and shows the prior method of supporting subjacent structures by wires or rods which are suspended through holes in the contiguous webs between the channels of the two elements.

The Escher patent shows concrete flooring having metal members comprising a floor beam, a right angled "furring bar" attached to the floor beam, and a plurality of generally U-shaped openings struck out from the flat bottom of the "furring bar," each defining a hook-shaped tongue adapted to be bent downwardly for supporting subjacent structures.

The John patent was not relied upon by the board and will not be described or discussed.

Appealed claim 1 was finally rejected by the examiner as unpatentable over the Graves' patent in view of the patents to Escher or John on the ground that Graves shows the claimed sectional cellular floor, with supporting members suspended from apertures in the upper and lower elements of the cellular floor, and that "no invention would be involved" in substituting for the apertures in Graves' lower element integral bent out tongues formed from generally U-shaped openings therein in view of the teachings of Escher or John.

In affirming, the Board of Appeals preferred to rely on the combination of

Graves and Escher and therefore did not further discuss the John patent. The Board noted that the Escher patent discloses the concept of providing tongue support members, which are struck from a metal support structure located in the underside of a floor of a building, and that a person of ordinary skill would find it obvious to provide the lower exposed metal members of Graves with struck tongue means such as those shown by Escher.

While Graves shows a cellular metal floor of the conventional type wherein hanging wires and rods are utilized for suspending a lighting fixture and "furring bars," we find no suggestion in this reference which would make it obvious to one of ordinary skill in this art to provide bendable metal tongues as proposed by appellant and which would have the *specific structure and location* specified in appealed claim 1.

The secondary reference, Escher, shows a "furring bar" which is fastened to a horizontal beam of a building framework. This bar is provided with struckout tongue elements which can be bent downwardly to provide suspension anchors beneath the concrete-enclosed beams of the building. The Escher "furring bars" are installed by securing them to the beams.

Appellant's invention is in the building art which this court has acknowledged to be

" * * * one of the oldest known to man and it can aptly be described as 'crowded.' " In re Hummer, 241 F.2d 742, 44 CCPA 814.

The Board of Appeals found it obvious for a person of ordinary skill in this art to substitute the hanger device from the Escher reference into the environment of the Graves (Canada) reference. There is no teaching in either reference which would suggest that substitution.

" * * * when references are combined, it should be considered whether the references suggest doing the thing which an applicant has done." In re Gruskin, 234 F.2d 493, 43 CCPA 962.

The sole suggestion in the record for placing the Escher tongues in the Graves' flooring is here found in the appellant's disclosure. The history of the art, as pointed out in appellant's brief, belies that the substitution is "obvious." None of the references cited, singly or in combination, discloses the advantages inherent in appellant's improved structure, namely, those seven enumerated in appellant's brief and quoted above.

Appellant's claimed invention departs from the prior art in the direction of simplicity rather than in the direction of complexity. Without adding any metal to cellular flooring and without substantially altering the appearance of cellular flooring, appellant has invented an improved suspension means for his cellular flooring.

The simplicity of this useful invention is, in retrospect, some evidence that it was not obvious to a person of ordinary skill in the art of building constructions employing cellular flooring. In re Osplack, 195 F.2d 921, 39 CCPA 932. Appellant's invention is a simple construction which we think constitutes a significant advance in the metal cellular flooring art. While it is admittedly simple, it had escaped the other workers in this crowded art. We do not think the simplicity of appellant's construction should deprive him of his right to a patent thereon. Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034.

For the foregoing reasons, we reverse the decision of the Board of Appeals as to claim 1.

Reversed.

MARTIN, Judge, with whom WORLEY, Chief Judge, joins, dissenting.

I disagree with my colleagues, as I believe it would be obvious for one skilled in this art to modify the Graves cellular floor construction which is identical in all significant respects to appellant's construction by placing the bendable tongue of Escher in the most advantageous place in that floor construction.