45 C.C.P.A. (Patents).

### Application of Roger GILMONT.
### Patent Appeal No. 6292.

United States Court of Customs and Patent Appeals.

Nov. 22, 1957.

A. A. Orlinger, Philadelphia, Pa., for appellant.

Clarence W. Moore, Washington, D. C. (Arthur H. Behrens, Washington, D. C., of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges.

JOHNSON, Chief Judge.

This is an appeal from a decision of the Patent Office Board of Appeals, rejecting claims 2 to 9 inclusive as unpatentable over the prior art, in appellant's application No. 197,667, filed November 27, 1950, for "Dispensing Device." No claims stand allowed.

Claims 2 and 9 are representative of the appealed claims and read as follows:

"2. A bottle as claimed in claim 9, wherein the entire wall of the body of the bottle is resiliently deformable and compressible and the diameter of the vent in the delivery tube is between about two and one-half one-thousandths and about one one-hundredth of an inch."

"9. A liquid-dispensing bottle operable entirely by the one hand in which it is held and comprising a resiliently deformable, hollow body to hold the liquid to be dispensed and adapted to permit transmitting pressure on the liquid merely from pressure applied by the hand by which the body of the bottle is held, a one-piece liquid-delivery tube, with part protruding from, and the rest extending through fluid-tight connection with, said body of the bottle to a point in its interior below the surface of the liquid to be held in it, and a small vent hole in the delivery tube connecting its hollow with the gas space in the bottle above the surface of the liquid to be held in it, said vent hole being of such size as to retain liquid in it while operating pressure is being applied to the bottle and to release liquid when the pressure is released, and through which vent the pressure over the liquid held in the bottle equalizes with that of the atmosphere outside of the bottle as any difference develops between them when no liquid is being dispensed from the bottle, the bottle body being otherwise completely closed and having its interior inaccessible to the atmosphere, said bottle being thus adapted to deliver a non-pulsating and non-spattering stream of liquid when pressure is applied to the bottle by the hand in which the bottle is held."

The invention relates to a dispensing device whose body is in the shape of an ordinary bottle and which is constructed of a resiliently deformable material such as polyethylene. A cap closes the bottle and running through said cap, in close-fitting relationship therewith, is a tube extending inside the bottle to the bottom thereof, whose outer end is in contact with the atmosphere. The tube is provided with a small aperture at a point high enough on that portion of the tube which is inside the bottle so that it will communicate with the air

space in the bottle above the level of the liquid which is to be placed therein. As set forth by appellant, the size of this aperture is large enough to permit the passage of air therethrough (when the device is not in operation) for the purpose of equalizing the pressure on the outside of the bottle with the pressure on the interior of the bottle (to prevent seepage of liquid through the tube) and yet small enough to prevent the ingress of air therethrough when the device is operated. Appellant claims that by virtue of the latter characteristic, the liquid running up through the tube, by virtue of its surface tension, actually seals the aperture (viz.: the aperture retains liquid therein) and precludes the possibility of obtaining a spattering stream of fluid from the nozzle of the tube which would result from the ingress of air were the aperture not sealed. Appellant describes his stream as "nonpulsating" and "non-spattering." Various modifications appear in several of the claims which will be discussed at a later point in this opinion.

The references relied upon are: Starkey, 7,276, Apr. 9, 1850; Elias, 879,951, Feb. 25, 1908; Saugman, 1,715,429, June 4, 1929; Schopmeyer, 2,531,745, Nov. 28, 1950.

The Saugman patent, which is the principal reference relied upon, discloses a dispensing device consisting of an attachment for a glass jug or bottle such as is commonly used in distributing beverages and syrups and fruit juices for the making of beverages. The attachment comprises a cap (which is to be screwed onto the neck of the bottle or jug), a deformable bulb attached to the top of the cap, the interior of which communicates with the air space above the surface of the liquid in the bottle through a port in the cap, and a conduit in said cap consisting of two communicating pipe-like elements, one of said elements, projecting horizontally out from the cap and the other projecting downwardly from the cap, the latter being of such length that in use it will project down almost to the bottom of the bottle.

A small aperture is located in the conduit at approximately the same point relative to the cap and the bottle as in appellant's device. Saugman describes the purpose of this aperture as follows:

"* * * I provide a small opening 45 near the upper end of the feed pipe 18 which opening allows passage of air between the interior of the pipe 18 and the interior of the container 10 above the liquid therein but does not allow any substantial amount of liquid to escape when the device is operated. This small hole 45 is a very important feature of the device, for if it were not for this opening or hole, pressure developing in the bulb and in the container above the liquid due to heat or any other cause would cause the liquid to rise in the tube 18 and possibly discharge through the spout 19 when not desired."

The patent to Starkey, insofar as pertinent, discloses an oil can comprising a bottle having a flexible body and a cap which is designed to receive a tube which extends into the can at one end and is exposed to the atmosphere at the other.

The patent to Elias, insofar as pertinent, discloses a device similar to that shown by Saugman except that the liquid conduit at its outer end is bent through approximately 130°. Near the small aperture in the conduit within the bottle and slidably mounted on the conduit is a sleeve designed to be movable over the aperture when desired. When the sleeve is not covering the aperture and the device is used, air is forced through the aperture and, mixing with the fluid rising through the conduit, forms a spray at the nozzle. When the sleeve covers the aperture, a "single jet" or solid stream of liquid is obtained when the device is in use.

The patent to Schopmeyer, insofar as pertinent, discloses a spray atomizer comprising a flexible squeeze bottle made of polyethylene.

The board rejected claims 2, 3, 5, 6 and 9 as unpatentable over Saugman in view of Starkey, holding that there

would be no invention in dispensing with the bulb of Saugman and making the body of the bottle of compressible material as taught by Starkey. As to the aperture in Saugman's conduit, the board said:

"* * * The purpose of the aperture disclosed in Saugman appears to be substantially the same as that of appellant and, if the particular size specified by appellant in claim 2, for example, is necessary to accomplish the result sought by both appellant and Saugman, it must be presupposed that the aperture 45 of Saugman will at least approximate the size specified in claim 2. Any difference in the size of the aperture 17 of appellant and the aperture 45 of Saugman would only be a matter of degree. * * *"

Notwithstanding appellant's argument to the contrary, we are of the opinion that the board's rejection as to claims 2, 3, 5, 6 and 9 must be affirmed. Saugman shows a device unquestionably similar to appellant's. Though Saugman's bottle is constructed of a non-resilient material, we agree with the board that it would not involve invention to modify Saugman by constructing the bottle of a resilient material as suggested by Starkey. With such modification, the flexible bulb of Saugman would obviously be an unnecessary appendage to the device and would be dispensed with. We are not swayed by appellant's argument that Saugman contemplated using his device in connection with bottles and jugs "commonly found at soda fountains" and that since "such jugs are commonly of a size to hold at least a gallon of syrup or beverage" they would be too bulky to be compressed by the hand of the operator (as would be necessary were the compressible bulb of Saugman to be dispensed with and replaced by a resilient bottle). While Saugman appears to have been specifically concerned with such an environment, the general teachings discussed above are not so limited. Nor are the problems with which Starkey and Saugman are concerned so different, at

least with respect to the flexible means by which pressure is applied, that a combination of the teachings thereof would be improper.

Appellant's main contention, however, relates to the alleged criticality of the size of the aperture in his device. He urges that in addition to its being large enough to permit pressure equalization when the device is not in use, it must be small enough to retain liquid in it when operating pressure is applied to the bottle (so that no air will pass through it); that Saugman contains no comparable teaching (which deficiency is not supplied by Starkey); that Saugman, in fact teaches the converse of this inasmuch as Saugman states that the aperture in his device "* * * allows passage of air between the interior of the pipe 18 and the interior of the container 10 above the liquid therein but does not allow any substantial amount of liquid to escape *when the device is operated.* * * *" (Emphasis added.) As to the latter point, appellant is apparently of the opinion that the italicized portion of Saugman was intended by the patentee to modify *all* of the quoted portion preceding it, viz.: that air will pass through the aperture "when the device is operated."

We do not agree with appellant's construction of the limiting effect of the words "when the device is operated," for we are of the opinion that Saugman's disclosure, when taken as a whole, makes obvious the fact that the quoted phrase was intended to modify only the words "but does not allow any substantial amount of liquid to escape," and not those words immediately preceding said words. It is true, however, as appellant asserts, that the patent to Saugman cannot be so construed as to positively embrace the *two* problems with which appellant was faced, viz.: providing an aperture large enough to allow pressure equalization and yet small enough to retain liquid in it and thus prevent the passage of air through it when operating pressure is exerted on the bottle. At best, Saugman was concerned only with

the former problem.[1] We are of the opinion, however, that having the Saugman reference before him, it would be obvious to the skilled artisan to do what appellant did.

It has long been known to those skilled in the art that when pressure is applied to a body of liquid in a system such as that disclosed by Saugman (pressure at the same time being exerted directly through the aperture) some air will pass through the aperture. Whether the air is drawn through the aperture by virtue of what is commonly known as an aspirating effect or is forced through by virtue of the positive pressure exerted directly at the aperture it is not necessary to decide. It was clear, however, that if the hole were large enough, the air passing through such opening would tend to cause the liquid to form a spray when passing out of a nozzle at the end of the conduit. The Elias disclosure is testimony of this fact. It is evident, therefore, that one desiring to obtain the benefits of the Saugman disclosure (viz.: to provide an aperture to equalize pressures) and yet, at the same time, to obtain a relatively non-pulsating stream, would experiment by progressively decreasing the size of a given aperture (to decrease the amount of air that would be sucked through it during operation of the dispensing device) until such point was reached that the hole was no longer larger than would be necessary to allow pressure equalization when the device was not in operation.

Nor is it sufficient to argue that the invention resides in the mental or creative *concept* leading to the instant dispensing device. While it is true that, in some cases, the concept of doing a thing must be considered along with the actual steps of doing it in considering the presence or absence of invention, In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982; In re McKenna, 203 F.2d 717, 40 C.C.P.A.,

Patents, 937; In re Pennington, 241 F.2d 750, 44 C.C.P.A., Patents, 789, this rule does not aid appellant in the instant case. At best, appellant recognized that, while it would be desirable to provide an aperture for the purpose of equalizing pressures, one could not obtain a non-pulsating stream due to the ingress of air through the aperture when the device was in operation. This much, however, was obvious to the skilled artisan, as has been heretofore pointed out. It is clear, therefore, that invention resided neither in appellant's conception nor in his devised means for reducing said conception to practical use.

Nor does the Elias disclosure teach away from the conclusion we have reached. Though Elias discloses only two conditions, one with the aperture open and one with the aperture completely closed (the former providing a spray, the latter a steady stream), this is not a teaching in the prior art that a steady, non-pulsating stream could not be obtained with the aperture "partially" open. Elias was not concerned with equalization of pressures when his device was not in operation. For this reason, if a steady stream was desired, there was no reason to have any portion of his aperture exposed.

For the foregoing reasons, the board's rejection of claims 2, 3, 5, 6 and 9 is affirmed.

 Claim 4 recites that the portion of the tube protruding from the cap extends substantially radially and parallel to the bottom of the bottle and was rejected by the board as unpatentable over Saugman in view of Starkey and Elias. The latter patent was used merely to show the expedient recited in this claim. The board noted, as well, that Saugman disclosed this feature. We agree that this claim does not patentably define over the references cited.

---

1. The Solicitor's contention that the aforementioned statement in Saugman that his aperture "does not allow any substantial amount of liquid to escape" is fully equivalent to appellant's provision for an aperture small enough to "retain liquid in it" is not well taken. Even in the Elias patent, where the vent is open and air rushes into the conduit to cause a spray, no liquid will escape.

■ Claim 7 recites that the bottle, the cap and the delivery tube are of polyethylene and was rejected by the board as unpatentable over Saugman in view of Starkey and Schopmeyer, the latter patent having been used to show the polyethylene construction. We agree with the board that no invention would reside in constructing the bottle of Saugman out of polyethylene as taught by Schopmeyer.

■ Claim 8 depends upon claim 9 and adds thereto the feature that the end of the delivery tube is sealed. This claim also recites that a liquid solution is contained in the sealed bottle. The board rejected this claim as unpatentable for the reasons and over the references applied against claim 9 adding thereto the observation that it would be obvious to seal the delivery tube of either Saugman or Starkey if one so desired. With this view we agree. It is therefore unnecessary to consider the additional rejection of claim 8 as being indefinite.

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Affirmed.

· JACKSON, Judge, retired, recalled to participate.